### WEST v. W. A. McLAUGHLIN & CO.'S TRUSTEE.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1908.)

No. 1,072.

1. BANKRUPTCY—COURT OF BANKRUPTCY—POWER TO VACATE ORDERS.

While it would be an abuse of discretion for a District Court to set aside an order allowing or rejecting a claim in bankruptcy and grant a rehearing for the sole purpose of extending the time within which an appeal may be taken as fixed by Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), yet such an order, like other orders, is within the control of the court, and may in its sound discretion be set aside for good cause shown, even after the expiration of the time allowed for appeal.

2. SAME—CLAIM FOR MONEY RECEIVED—BANKRUPT AS BROKER—BURDEN OF
PROOF.
  Where the bankrupt was a stockbroker, and it was shown without dis-
pute that a claimant paid him a sum of money with which to purchase
certain stocks, the burden rested upon the bankrupt as agent, or on his
trustee, who stood in his place, to account for such money; otherwise,
claimant was entitled to the allowance of his claim as for money received
to his use.

Appeal from the District Court of the United States for the East-
ern District of Michigan.

Edward A. Barnes, for appellant.

George B. Perry, for appellee.

Before LURTON and RICHARDS, Circuit Judges, and EVANS,
District Judge.

EVANS, District Judge.  The appellant proved and filed a claim
for $5,000 for money had and received from him by the bankrupt.
Objection to the claim was made by the trustee, and upon the testi-
mony heard before the referee the latter disallowed it.  On the 23d
day of July, 1907, the District Court affirmed the order of the referee,
and the judge, having at once left upon a vacation trip, was not, for
over 10 days, within reach of appellant's counsel, who desired to take
steps for an appeal.  No reason is disclosed by the record for not
taking other available steps for that purpose; but on the 13th day of
September, 1907, appellant filed a petition for a rehearing.  The court
granted that relief, and after further discussion in a second opinion
the district judge again and somewhat more at length stated his rea-
sons for adhering to the judgment affirming the referee's order dis-
allowing the claim.  The order of the District Court again affirming
the referee was entered on the 30th day of October, 1907.

The appellee has moved for the dismissal of the appeal.  Section
25a of the bankruptcy act (Act July 1, 1898, c, 541, 30 Stat. 553
[U. S. Comp. St. 1901, p. 3432]) provides:

  "That appeals, as in equity cases, may be taken in bankruptcy proceedings
from the courts of bankruptcy to the Circuit Court of Appeals of the United
States, and to the Supreme Court of the territories, in the following cases,
to wit: (1) From a judgment adjudging or refusing to adjudge the defendant
a bankrupt; (2) from a judgment granting or denying a discharge; and (3)
from a judgment allowing or rejecting a debt or claim of five hundred dol-
lars or over.  Such appeal shall be taken within ten days after the judgment
appealed from has been rendered, and may be heard and determined by the
appellate court in term or vacation, as the case may be."

One purpose which runs through the act is to require the prompt
and expeditious winding up of estates, and the provision just copied
was intended to promote that end.  Notwithstanding some judicial
expressions which possibly favor it, we cannot accept as accurate or
sustainable the contention that it would not be an abuse of the dis-
cretion of the court to set aside an order disallowing a claim for the
sole purpose of extending the time for taking an appeal.  We con-
ceive that such a course would practically nullify the wise provision
of the statute, and go beyond the bounds of a proper discretion; but
we do not doubt that an order disallowing a claim, as well as other

orders, is within the control of the court making it, and that the court may, in the exercise of a sound judicial discretion, set it aside, even after the expiration of 10 days. This court, in the case of In re Ives, 113 Fed. 911, 51 C. C. A. 541, so decided upon a kindred proposition and fully stated the reasons for the rule. The record shows that it was not a mere purpose to evade section 25a that induced the court below to set aside its order in this instance, but that it was done in order to have further investigation, and the learned judge of the District Court not only re-examined the questions involved, but more elaborately stated his views thereon. The fact that he again arrived at the same conclusion did not neutralize his power to grant the rehearing, though some concession to the supposed hardship of the case may have had weight with him. Having reached the conclusion that there was no abuse of the court's discretion in granting the rehearing, the motion to dismiss the appeal will be denied.

The bankrupt did a brokerage business in the city of Detroit. He was employed by the appellant as agent to purchase 350 shares of the stock of the Virginia Coal, Iron & Coke Company, and the debt attempted to be proved was for money paid to the bankrupt on account of that purchase. In the proof of debt which constituted appellant's pleading, nothing was said to indicate that the transaction was one of gaming. The testimony does not show that it was ever intended or supposed by appellant to have been such, and in our judgment the case did not properly turn upon whether or not the transaction was one of wagering, although the referee and the court below seem to have proceeded upon the theory that it did. The evidence, indeed, took a somewhat wider range, but the appellant's real contention was that the stock was never in fact bought by the bankrupt, and that the report of the latter that such purchase had been made was not true, but had been falsely made for the purpose of inducing the appellant to make the payments which constitute the basis of the claim. Nor did the bankrupt himself claim ever to have dealt with appellant on a wagering or "bucket shop" basis. In his testimony he says:

"I claimed to be a legitimate house. I never gave Mr. West to understand that when I received an order for stocks and reported it as filled that I had not actually bought the stock that I reported as bought. I always told him that I bought it. Mr. West never had any reason from me to my knowledge to suppose that when he placed an order with me and I reported it as filled that it was treated as a bucket-shop deal."

The referee, in rejecting the claim, said:

"To my mind it is hard to arrive at a balance between the diverse testimony given in this case. On the one hand, I am not thoroughly convinced that McLaughlin carried on a business which in every respect, as a broker business, was above reproach; nor, on the other hand, am I convinced that there is sufficient testimony to show that his dealings were those of a bucket shop. When a party comes in, as does Mr. West in this case, after a party has gone into bankruptcy, I am convinced, no matter what might be the case before the adjudication, that the strictest kind of proof should be presented on his part to make out his claim. I am mindful of what Mr. Barnes says as to shifting of the burden of proof, and in business I can understand, as in Swineford, supra, that the plaintiff might be in such a position that the burden of proof would be shifted so that the defendant would have to show his business transaction. But we have a different condition of affairs here. The

trustee comes in and takes possession of this property as he finds it. He has only the books and papers which he finds in his possession, and I do not think that it is his place to make an affirmative proof that the allegations made by the plaintiff are not true. Taking into consideration the testimony as presented to me, and the relative situation of the parties, and the condition of affairs at the time of the adjudication of bankrupt, I do not think that Mr. West has made out his case, and my finding, therefore, is that his claim should be denied."

Not only did the referee think that appellant should be required to adduce "the strictest kind of proof," but he added this statement:

"If the claimant and his attorney desire to appeal the case, they will have 10 days from this date, on *paying all costs incurred before the referee*."

We have italicized the unusual intimations contained in this statement, which seem to cover inadmissible additions to what is required under General Orders in Bankruptcy No. 27 [1] in exercising the right there given to obtain a review by the judge of an order of the referee. However, the matter was taken before the district judge upon a petition for a review, and he affirmed the order of the referee, stating his views both as to the law and the facts in a written opinion, and it is urged that his conclusions as to the facts should have controlling weight on appeal. In Dodge v. Norlin, 133 Fed., at page 371, 66 C. C. A., at page 433, the Circuit Court of Appeals of the Eighth Circuit said:

"Where the court below has considered a question and made a finding on conflicting evidence, its conclusion is presumptively correct, and it should not be disturbed unless it is reasonably clear that a serious mistake has been made in the consideration of the facts or an obvious error has intervened in the application of the law. Stearns-Roger Mfg. Co. v. Brown, 114 Fed. 939, 943, 52 C. C. A. 559, 563."

We will deal for the present with the proposition suggested in the last clause of what was thus stated in that case. The question of law lying at the root of what we are to determine is as to where lay the burden of proof. The referee, as we have seen, based his ruling upon the idea that appellant, under the circumstances, must establish his claim by "the strictest kind of proof." The court below held that:

"The burden is on the claimant to establish his case by a preponderance of evidence, and that the presumption of law is against the commission of the fraud charged."

The question is whether this proposition is correct as applied to this case. The general rule is very clearly stated in 1 Phillips on Evidence, *812, *813, in this language:

"Where one party charges another with a culpable omission or breach of duty, the person who makes the charge is bound to prove it, though it may involve a negative; for it is one of the first principles of justice not to presume that a person acted illegally till the contrary is proved."

But at least one exception to this general rule is well established. An agent must execute with fidelity the duties of his trust. He must make true and accurate reports of what he does, and must render a true account of what he did with money intrusted to him for investment or disbursement. Am. & Eng. Encyc. of Law, pp. 1058, 1071, 1086; 4 Am. & Eng. Encyc. of Law, 968. In this case it is agreed upon all hands that

[1] 32 C. C. A. xxvii.

the money was paid to the bankrupt for the purpose already indicated. In such a case the Supreme Judicial Court of Massachusetts, in its opinion in Lonergan v. Peck, 136 Mass. 364, said:

"The delivery of the moneys being undisputed, the burden of proof was on the defendant to show that he had honestly made transactions in the purchase and sale of stocks as ordered."

The case of Peterson v. Poignard, decided by the Kentucky Court of Appeals, and reported in 8 B. Mon. 309, was one which arose out of transactions between a principal and his agent. After pointing out certain suspicious facts and the neglect of the agent to perform the duty of keeping a precise and accurate account of all transactions pertaining to the agency, the court, at page 310, said:

"His competency to do this is well established, and it cannot be doubted that he was well aware of its importance and necessity. His failure authorizes unfavorable inferences, and subjects him now, when called on for an account, to a heavy burthen of suspicion as well as of proof."

We have no doubt of the correctness of these views, and particularly as they were expressed by the Supreme Judicial Court of Massachusetts.

Another consideration should not be overlooked. The facts as to any purchase made by an agent pursuant to instructions are peculiarly within his knowledge. When, as here, he is a competent witness in behalf of the trustee, it is naturally very much easier for him to show and testify to the facts as to what he had done than it would be for the principal, who was not an actual participant in the transaction. These considerations bring the case within the reach of another elementary principle, which is stated by Best, in section 274 of his Principles of Evidence, in this language:

"It has been established as a general rule of evidence that the burden of proof lies on the person who wishes to support his case by a particular fact which lies more peculiarly within his knowledge or of which he is supposed to be cognizant."

This rule is also laid down in Greenleaf on Evidence, § 79, and was approved by the Supreme Court in Rome, etc., R. R. Co. v. United States, 139 U. S. 568, 11 Sup. Ct. 638, 35 L. Ed. 266.

The testimony leaves no doubt that the money was paid to the bankrupt for the purpose of buying the 350 shares of stock in the Virginia, etc., Company; and, this being true, we think the court below proceeded upon an erroneous theory of the principles of law upon which the case was to be tried and determined. The trustee represented the bankrupt, stood in his shoes, and the burden of proof rested upon him, precisely as it would have rested upon the bankrupt, had there been no adjudication, and it devolved upon appellee to show that the purchase had in fact been made by the bankrupt in order to defeat the claim. If the purchase had not been made, the bankrupt held the $5,000 for appellant's use, and as money which, in equity and good conscience, he ought not to retain. The burden was not upon the creditor to show that there was no actual purchase of stock, and it was error to disallow and reject the claim upon the contrary assumption.

We do not question the general proposition, so often announced by

appellate tribunals, where a case turns upon an issue of fact, particularly where the testimony is contradictory, and where there may be advantages in seeing or knowing the witnesses and hearing them testify, that the appellate court will presume that the findings of fact by the lower court were correct, though this is always with the qualification that such findings do not appear to be clearly against the weight of the testimony. Ohio Valley Bank v. Mack, 163 Fed. 155.

But, apart even from this rule, we do not find in the testimony the "flat contradictions" which the court below thought had developed. On the contrary, upon the essential facts of payment of the money by the bankrupt and his failure to actually buy the stock, we think there is no real or substantial contradiction. We think it is clear from even the bankrupt's testimony that the stock was not bought at all, and that he only treated it as a case where it was supposed to have been bought by the Odell Commission Company.

But, without pursuing the subject further, we conclude, for the reasons suggested, that the judgment must be reversed, with directions to the court below to allow the claim of appellant as an unsecured demand against the bankrupt's estate. Appellant is also entitled to his costs.