In re BROWN et al. (two cases).

(Circuit Court of Appeals, Second Circuit. November 14, 1910.)

Nos. 37, 40.

1. BANKRUPTCY (§ 140*)—MONEY RECEIVED BY BANKRUPT AS BROKER—TRUST.
    Claimant ordered bankrupts, as brokers, through a branch office, to purchase for him certain stocks, and, being advised that they had been purchased, paid in the price to the branch office, which deposited the money in a local bank. The account of the bankrupts in such bank between that time and the bankruptcy never fell below the amount of such deposit, and the balance was paid over to their receiver. *Held* that, to entitle claimant to rescind and follow the purchase money as a trust fund, he had the burden of proving that the stocks were not bought by the bankrupts, and that such burden was not sustained by proof that they were not delivered to him and did not come into the hands of the bankrupts' receiver or trustee.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 140*)—MONEY RECEIVED BY BANKRUPT AS BROKER—TRUST.
    Claimant ordered bankrupts, as brokers, to purchase for her certain stocks, and, being advised that the purchase had been made, paid bankrupts for the same. Bankrupts ordered the stock to be bought by another firm of brokers, which was done on the floor of the Exchange. On the same day bankrupts ordered the same amount of the same stock sold for another customer, which was also done. The two firms settled the transactions by setting off one against the other and the payment of the difference. *Held*, that such facts did not show that claimant's stock was not purchased, so as to entitle her to rescind and follow the purchase money paid in the hands of the bankrupt's trustee.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

Petitions to Review Orders of the District Court of the United States for the Southern District of New York.

In the matter of A. O. Brown and others, bankrupts. On petitions by Helen N. Wilkin and H. J. Horrocks, respectively, to review orders of the District Court. Affirmed.

See, also, 175 Fed. 769, 99 C. C. A. 345.

Tomlinson, Tompkins & Tomlinson (John C. Tomlinson, Jr., and Millard F. Tompkins, of counsel), for petitioner Wilkin.

Edwin P. Shattuck and Garrard Glenn, for petitioner Horrocks.

Ralph Wolf, for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. August 20, 1908, H. J. Horrocks, of Utica, ordered through the branch office there of A. O. Brown & Co., stockbrokers, of New York, the purchase of 20 shares of International Paper Company preferred at 56. He waited in the office until a reply was received from New York that the stock had been purchased, and thereupon paid the price and commission in full, $1,122.-50, by a check which was deposited in the account of A. O. Brown & Co. in the Utica City National Bank and paid in due course.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

August 27th an involuntary petition was filed against A. O. Brown & Co., September 1st a receiver was appointed, and an adjudication followed. The account of A. O. Brown & Co. in the Utica Bank between August 20 and September 1, 1908, never fell below $1,122.50, and the receiver actually received September 4th the net balance of $1,102.50.

The claimant assumes from this state of facts that Brown & Co. never did buy the stock, and therefore that he is entitled to the purchase price paid them out of the balance of their account in the Utica Bank. This on the principle that Brown & Co. must be presumed to have drawn out of that account only their own moneys, leaving the claimant's money still there. To reach this result, however, it is a part of his case that Brown & Co. never did purchase the stock, and this fact he must prove. But there is no proof on the subject at all, further than that neither the claimant, nor the receiver, nor the trustee has ever received the stock. If Brown & Co. bought and converted it between August 20 and 27, 1908, the claimant cannot rescind and follow the purchase price, but may follow the proceeds of the conversion, if he can. This was what we decided in the matter of the claim of the First National Bank of Princeton, Illinois, in this same estate. 175 Fed. 769, 99 C. C. A. 345.

The case of West v. McLaughlin, 162 Fed. 124, 89 C. C. A. 124, on which the claimant relies, is not applicable, because in it no adverse claim of title was made. Of course, in a suit against Brown & Co. for breach of contract, the claimant would make out a prima facie case by showing that he had paid them for the stock and had not received it. The burden would then be on the defendant to explain. But, where he asserts a title to or lien upon funds in possession of an insolvent as against general creditors, he must go further and actually trace his property into the fund. The special master sustained this claim and directed it to be paid ratably with the claim of Helen M. Wilkin, next to be considered, out of the balance collected by the receiver from the National City Bank of Utica. The District Judge rightly reversed this ruling.

August 13, 1908, Mrs. Helen M. Wilkin, through the same branch office at Utica, ordered Brown & Co. to purchase 10 shares of American Locomotive Company stock. She was informed on the same day that the stock had been bought of Carlisle, Mellick & Co. at 58¼, and thereupon gave her check for $583.75 in full payment, which was deposited in the account of Brown & Co. in the Utica City National Bank and paid in due course. At no time between August 13th and September 1st was the balance less than $583.75, and September 4th the receiver actually collected a net balance of $1,102.50. Neither the claimant, nor the receiver, nor trustee has ever received the stock. August 13th Brown & Co. ordered the stock to be bought through Carlisle, Mellick & Co., and Carlisle, Mellick & Co. bought the same on the floor of the New York Stock Exchange. On the same day Brown & Co. ordered Carlisle, Mellick & Co. to sell 10 shares of the same stock for other accounts. August 19th Carlisle, Mellick & Co. and Brown & Co. set off the claimant's purchase

against the other customer's sale and settled for the difference, and no actual physical delivery of stock was made.

The claimant contends that this shows no stock ever was purchased for Mrs. Wilkin, and therefore that she is entitled to the purchase price paid by her out of the fund received from the Utica City National Bank. , We think this is not so. The transactions between Brown & Co. and Carlisle, Mellick & Co. 'literally worked out, would be as follows, supposing Carlisle, Mellick & Co.'s selling customer sold at 56: Brown & Co. would hand to Carlisle, Mellick & Co. Mrs. Wilkin's $580 and their selling customer's 10 shares of stock, while Carlisle, Mellick & Co. would hand to Brown & Co. their buying customer's $560 and their selling customer's 10 shares of stock. Obviously the same thing would be accomplished and all curcumlocution avoided by Brown & Co. paying $20 to Carlisle, Mellick & Co. This being done, Brown & Co. should hand their selling customer's stock to Mrs. Wilkin, and the balance of Mrs. Wilkin's money, viz., $560, to their selling customer. Not having given the stock to Mrs. Wilkin, they must be regarded as having converted it.

. It follows, from what we have said above as to the Horrocks claim, that the remedy of Mrs. Wilkin was to trace, not the purchase price, but the proceeds of her stock, if she can, into the hands of the trustee. As she failed to do this, the District Judge rightly held that she had no title to any part of the balance in the Utica City National Bank.

Both orders affirmed, with costs.