In re ENNIS et al.

(Circuit Court of Appeals, Second Circuit.   April 10, 1911.)

No. 186.

1. BANKRUPTCY (§ 140*)—BROKERS—RECLAMATION OF SECURITIES BY CUS-
TOMERS.

When a broker, prior to his bankruptcy, had pledged to a bank, as col-
lateral to a loan, securities of others in his hands which he had no right
to hypothecate, and also others which he had authority to pledge, the
owners of the first class of securities have a superior equity, and may be
subrogated to the right of the bankrupt against the owners of the other
class.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec.
Dig. § 140.*]

2. BROKERS (§ 23*)—SECURITIES PLEDGED BY CUSTOMER—RIGHT TO REHY-
POTHECATE.

Where a customer of a broker has deposited securities as collateral
to his speculative account, so long as the broker fulfills his obligations
to the customer, he has the right to rehypothecate such securities; but
such right ceases if he converts to his own use or misappropriates the
stocks or property of the customer, the duty and the right being correla-
tive.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 16; Dec. Dig.
§ 23.*]

3. BANKRUPTCY (§ 140*)—BROKERS—EQUITIES OF CUSTOMERS IN PLEDGED SE-
CURITIES.

Where brokers, prior to their bankruptcy, had received securities of
claimant which he had deposited as collateral to his speculative account,
but also had purchased stocks for his account of greater value than the
amount of his indebtedness, and had converted or misappropriated such
stocks, and also certain of the collateral, there was no indebtedness on
claimant's part which gave them a legitimate right to rehypothecate any
of his collateral, and such a pledge was wrongful, and gave claimant
an equity in the surplus proceeds of the pledged collateral equal to that
of any other claimant.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec.
Dig. § 140.*]

4. BANKRUPTCY (§ 140*)—BROKERS—EQUITIES IN PLEDGED SECURITIES.

Bankrupts, as brokers, sold certain bonds for claimant, receiving a
check in payment, which they deposited in bank just prior to the bank-
ruptcy. Claimant sent the bonds for delivery by an agent, with instruc-
tions to procure a certified check for the same and deposit it in another
bank. He obtained a check, which could have been certified, if pre-
sented, but deposited it without certification. On the bankruptcy, the
bank applied the balance standing to the bankrupts' account, which in-
cluded the deposit made from the proceeds of the bonds, on a note of
bankrupts, and sold collateral to pay the balance, leaving a surplus,
which was turned over to the trustee. Held, that claimant had an
equitable lien on the fund, and was entitled to share ratably with cus-
tomers of the bankrupts who were owners of collateral which the bank-
rupts had wrongfully pledged.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec.
Dig. § 140.*]

Petition to Revise and Appeal from the District Court of the United
States for the Southern District of New York.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of Thomas A. Ennis and Charles F. Stoppani, bankrupts. Walter Bamford petitions to revise certain orders of the District Court, and also appeals from said orders. Affirmed as to one order, and reversed as to one.

### I. Statement of Facts Concerning the Claim of the Appellant Bamford.

The bankrupts were stockbrokers, doing business in New York City. The appellant was a customer of the bankrupts, who had deposited certain securities with them as collateral for his speculative account, and who, after the bankruptcy, filed a petition in the District Court praying, among other things, for the reclamation of such of said securities as might have come into the possession of the receiver. While this proceeding was pending it appeared that the securities of various claimants—including some of the appellant's—had been hypothecated to secure loans to the bankrupts at the Mechanics' National Bank, New York, and that said bank had satisfied such loans by the application of a balance on deposit to the credit of the bankrupts and by the sale of a portion of the collateral and had a surplus fund on hand. The District Court ordered the bank to turn over this fund to the receiver, and thereafter the petitions of various claimants interested in such fund, including that of the appellant were in effect consolidated, and the rights of all parties referred to a special master for determination.

The special master found that 82 shares of Safety Car Heating stock had been deposited by the appellant with the bankrupts as collateral, and were included in the securities hypothecated with the Mechanics' Bank, and that, after the bankruptcy, they were sold by the bank. The master further found that the claimant was entitled to a lien on said surplus fund turned over by the bank to the receiver, "subject to the payment of his proportion of the burden of the loan"—a condition which will be hereafter explained. The special master also found that 30 shares of Paterson Savings Institution stock had likewise been deposited by the appellant with the bankrupts, and had been included in the collateral delivered to the Mechanics' Bank, and that said shares had been returned unsold by the bank to the receiver and were in his possession. The master found that the appellant was entitled to receive said shares upon making the same contributions as in the case of the Car Heating stock. The report of the special master was confirmed by the District Court.

The condition, "subject to the payment of his proportion of the burden of the loan," attached by the master to the order in the appellant's favor seems to mean substantially this: The master awarded relief to two classes of claimants for securities or proceeds—class A and class B. Claimants placed in class A were held entitled, by reason of superior equities, to the specific restitution of their securities, or were awarded a lien on said surplus fund for the amount of the proceeds of their securities, without contribution, except for expenses. The fund was insufficient to pay all claimants upon this basis, so that the claimants placed in class B in receiving less than their proportionate share of the fund, were said to contribute to the burden of the loan. The appellant was placed in class B and the primary contention made in his behalf is that he should have been put in class A.

### II. Statement of Facts Concerning the Claim of the People's Bank.

The special master, in addition to the claims of the nature already described as being placed in class A, allocated to that class the claim of the People's Bank of Passaic, N. J., arising from an alleged constructive trust in certain funds which the special master found could be followed into the bank account of the bankrupts. The appellant Bamford, in addition to objecting to his own exclusion from class A, contends that there was error in including the People's Bank in that class. The facts concerning this claim of the People's Bank may be thus summarized from the findings of the special master:

On April 9, 1909, the People's Bank ordered sold through the bankrupts' Passaic branch $15,000 of certain bonds. The order was executed upon the same day, and the bonds were sold to one Cohen. On April 12, 1909—holi-

days intervening—the bonds were delivered to the bankrupts at New York. The messenger who delivered the bonds was instructed to obtain a certified check for their proceeds and to deposit the same in a New York bank. The messenger, however, delivered the bonds upon an uncertified check drawn upon the Mechanics' Bank and deposited that. The condition of the bankrupts' bank account upon said day would have permitted the certification of a check for the amount of the proceeds of said bonds. On April 13, 1909, the bankrupts suspended, and payment of said uncertified check was refused by, the bank upon which it was drawn. The check received from Cohen for the purchase price of said bonds was deposited to the credit of the bankrupts in said Mechanics' Bank. The People's Bank had no account with the bankrupts, except a deposit account of the bankrupts, the balance due upon which was deducted by the master from the claim of said bank.

Other material facts concerning both the claim of the appellant Bamford and that of the People's Bank are stated in the opinion.

D. W. Noel (Garrard Glenn, of counsel), for appellant.

Hays, Hershfield & Wolf (E. D. Hays, of counsel), for respondent.

Lawrence & Lawrence (P. Lawrence, of counsel), for People's Bank.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The question in this case is between claimants who have identified their securities among the collateral pledged by the bankrupts to the Mechanics' Bank. There are not enough securities or proceeds to satisfy all demands, and there must be either a pro rata distribution, or some claimants must have priority over others.

[1] The granting of priority necessarily imposes upon certain claimants the burden of contributing for the benefit of others, and should only be accorded in the case of superior equities. But superior equities undoubtedly exist in favor of certain of the claimants in these proceedings. Broadly speaking, we approve what we consider to be the underlying principle of the classification adopted by the special master, viz., that superior rights should be accorded to claimants whose securities have been wrongfully hypothecated by the bankrupts over those whose securities have been rightfully pledged. When a broker pledges as collateral to his loan at a bank securities left with him for safe-keeping or for sale, he is a wrongdoer from the outset, and, while the bank may have the right to hold the securities, the claim of the owner, upon the satisfaction of the bank's demand, is of the highest equity. On the other hand, when a broker, acting under the authority conferred upon him by a customer, hypothecates his securities, the latter may, upon the adjustment of his account with the broker and the termination of the bank's demand, reclaim his securities; but, as he has no ground for complaining that his securities were pledged, his rights are clearly inferior to the owner whose securities were wrongfully hypothecated.[1]

But while a broad basis of classification, dependent upon the question whether, at the time of the bankruptcy, securities were rightfully

---

[1] The principle involved may be stated in another way by saying that the claimants whose securities were hypothecated by the bankrupts without right may be subrogated to the rights of the bankrupts against other claimants.

or wrongfully in hypothecation, is proper, some flexibility is necessary in the application of the principle. Equities cannot always be measured by a hard and fast rule. So there are different factors to be taken into consideration in weighing equities. Technical want of authority in the bankrupts to hypothecate might, in itself, establish wrongful hypothecation; but still the question of authority might be so doubtful that a claimant in whose case the want of power was unquestionable might have superior equities. The question whether at the time of the failure the claimant was a debtor or creditor of the bankrupts might be of the utmost importance; for, as a general rule, the bankrupts would have had no right to hypothecate, except where an indebtedness existed. But a mere nominal indebtedness might not afford foundation for such right, and there might be a difference in equities between a claimant who concededly would have had a large balance to his credit upon liquidation and one whose position as debtor or creditor was uncertain. Finally the extent of the wrong is a measure of the equity, and in determining the place to which the appellant's demand should be allocated we should ascertain how far the bankrupts violated the obligations which they owed him.

[2] Now, what were the rights of the parties with respect to the securities which the appellant placed in the hands of the bankrupts as securities for his speculative account? It is the better view, in our opinion, that so long as the bankrupts, as brokers, fulfilled their obligations to the appellant, as customer, they had the right to rehypothecate the securities pledged to them. That was subsantially the only way in which the collateral could have been made available, and, in view of modern business conditions, we think that such use must have been within the contemplation of the parties. But it must be equally true that if the bankrupts converted to their own use the stocks of the appellant which they were carrying for him, or misappropriated the property deposited with them; they violated the duties which they owed him, and their right to use the securities for their benefit terminated. Duties must be correlative to powers.

The inquiry, then, is important whether the bankrupts up to the time of the failure had fulfilled their obligations to the appellant. And in considering this question of obligation and performance, and the consequent inquiry whether the appellant's securities were rightfully in hypothecation at the time of the failure, the question as we have already seen, is not altogether whether there was a nominal indebtedness upon the part of the appellant to the bankrupts at the time of the failure. If, aside from the securities in question, the stocks which the bankrupts purported to carry for the appellant were worth, according to their own account, more than the amount advanced upon them, and if the bankrupts had misappropriated property of the appellant, and if, in addition, the bankrupts, at the time of their failure, had not in their possession or under their control the securities which the appellant had purchased or corresponding shares, we should have no doubt that the bankrupts had been guilty of breach of trust and of gross dereliction of duty, and that, as between the bankrupts and the appellant, the securities in question were wrongfully in hypothecation

at the time of the failure. To hold otherwise would be to say that a broker who violates every obligation which he owes his customer may yet use the property of the customer in the same manner as if he had done his full duty.

[3] Now, the report of the master "restates" the account of the appellant with the bankrupts, and shows a substantial balance in favor of the appellant, without counting the securities in question. This statement is made in view of liquidation as of the time of the failure, and shows that the bankrupts, according to their own account, had more securities and property of the appellant than the amount he owed, and that the securities in question were not required for the marginal purposes for which they were deposited. It also appears from the master's report that the bankrupts, some time before the failure, had misappropriated shares of Shoe Machinery stock deposited with them, like the securities in question, as collateral. This misappropriation alone constituted a grave dereliction of duty, which would have justified the appellant, had he known of it, in terminating relations with the bankrupts and in calling them to account. It further appears from the testimony in the record that when the bankrupts failed they did not have in their possession or under their control the stocks they had purchased for the appellant, or corresponding shares.[2] This proof might be insufficient to establish conversion at any particular time prior to the failure; but it does make out at least a prima facie case of conversion at *some* time prior thereto. Unless the bankrupts had converted the shares, they would necessarily have had them on hand or subject to their control, and it was their duty and that of their trustee to explain what had become of them.[3]

For these reasons we are of the opinion:

(1) That the hypothecation of the shares in question was not necessary for the purposes for which they were deposited with the bankrupts.

(2) That the bankrupts, by their misconduct in misappropriating the Shoe Machinery stock belonging to the appellant, lost their right to the continued use of his other property.

(3) That the bankrupts, by the conversion of the appellant's "long"

---

[2] The contention of the trustee that the holding at the time of the failure of small lots of stocks, less in each instance—except in the case of U. S. Steel—than the amounts ordered and reported as purchased for the appellant's account, may be regarded as part performance of the bankrupts' obligation to purchase and hold, if well founded, does not materially change the situation, nor relieve the bankrupts from the substantial charge of conversion.

[3] In reaching the conclusion stated in the text, we fully adhere to our opinion expressed in Matter of McIntyre, 174 Fed. 627, 98 C. C. A. 381, that conversion of shares on a particular day is not established by entries in a stock record book showing that on such day the difference between deliveries and receipts of shares of a particular stock was less than the number of shares of such stock purchased for the claimant. As we pointed out, the bankrupts may have had under their control other shares not shown in the stockbook. But the present case is of an entirely different nature. The appellant is not seeking to follow the proceeds of converted "long" stock. The trustee is endeavoring to justify the hypothecation of the appellant's securities. Moreover, the inference to be drawn from a failure without the shares

securities and failure to carry them, lost their right to the continued use of collateral deposited as margin on stocks to be actually carried.

(4) That for some time prior to the failure the bankrupts owed the appellant the duty of withdrawing the securities in question from the pledge in the Mechanics' Bank and of surrendering them to him.

(5) That, consequently, the securities in question at the time of the failure, stood in the Mechanics' Bank in the position of securities wrongfully pledged.

And, as a corollary to these conclusions, we further hold that the equities of the appellant entitle him to be placed in class A, instead of in class B.

[4] With respect to the claim of the People's Bank of Passaic, to which appellant objects: The master, after finding that the bankrupts' checks to the People's Bank, given for the proceeds of its bonds which had been sold by the bankrupts, was susceptible of immediate certification, had it been presented to the Mechanics' Bank on which it was drawn, and that the check received by the bankrupts from the purchaser of such bonds was deposited in said Mechanics' Bank, said:

"Although there was no conversion of the bonds or the Cohen check, it does not follow that claimant is remediless to impress a trust on the proceeds, upon the equitable principles of mistake. Both parties assumed that Ennis & Stoppani's check on the Mechanics' National Bank would be certified and paid. It was susceptible of certification, and the bonds were delivered in reliance on that fact. The messenger could not, by omitting to procure its certification, waive the right thereto, and there is nothing in the fact that he deposited the check uncertified which evinces an intention on the part of his employers to extend credit to Ennis & Stoppani. I am of the opinion that, by the well-settled doctrines of equity, a constructive trust arises in this case, where one party has received property which does not equitably belong to him, and which he cannot in good conscience retain or withhold from one who is beneficially entitled thereto."

In our opinion these conclusions of the special master were correct. The proceeds of the claimant's bonds constituted trust funds, which were traced into the Mechanics' Bank and have unjustly enriched the bankrupts' estate.

The contention of the appellant Bamford that the doctrine of unjust enrichment cannot apply against him and the other legal and equitable

to be delivered on account of purchases is very different from that to be drawn from the mere difference in balances upon a particular day in a particular book.

With respect to the burden of proof: The question here is not one of an adverse claim of title. The appellant is not attempting, with respect to the speculative account, to show damages by conversion nor to follow property. The inquiry is simply whether the bankrupts fulfilled the obligations which they owed to the appellant, and the controlling principles are those of West v. McLaughlin, 162 Fed. 124, 89 C. C. A. 124, where the Circuit Court of Appeals for the Sixth Circuit, in holding that the burden rested upon the trustee of a bankrupt stockbroker to account for moneys placed in the hands of the latter, said: "An agent must execute with fidelity the duties of his trust. He must make true and accurate reports of what he does, and must render a true account of what he did with money intrusted to him for investment or disbursement." The decision of this court in Matter of Brown, 185 Fed. 766, handed down November 14, 1910, is in no way inconsistent with this conclusion.

owners of securities wrongfully pledged is not well founded. The proceeds of these bonds increased the amount of the bankrupts'·deposit in the Mechanics' Bank. This deposit was applied by said bank in liquidating the indebtedness of the bankrupts to it, and resulted in the turning over to the trustee of a greater surplus fund than would otherwise have been the case. In other words, the fund being distributed in these proceedings was, in effect, increased by the amount of the claimant's trust funds through their deposit in the bank.

Manifestly the People's Bank was entitled to share in the fund, and the only question is whether it should remain in class A, where the master placed it, or should be transferred to class B. As, however, the bankrupts had no lien or charge against the claimant's moneys which went to the ultimate increase of the fund turned over to the trustee, we think that its claim against such fund should stand upon the same basis as the claim of those whose securities went into such fund and against which the bankrupts had no claim. In other words, in weighing equities, we should not distinguish between the contribution of moneys and securities to the fund.

The order of the District Court in placing the claim of the appellant. in class B is reversed, with costs, and the matter remanded for further proceedings in accordance with this opinion.

The order of the District Court with respect to the claim of the People's Bank of Passaic is affirmed, with one-half the costs in such matter against the appellant Bamford.