In re A. O. BROWN & CO.

Ex parte SMART.

(District Court, S. D. New York. May 16, 1911.)

**1. BROKERS (§ 23*)—CUSTODY OF PRINCIPAL'S FUNDS—EFFECT OF PURCHASE WITHOUT DELIVERY.**

When a customer gives money to a broker to invest, the broker holds it in trust until he has received the securities in which he is to invest it. No mere contract of purchase satisfies the condition on which he may be permitted to appropriate it, but only an actual delivery to him of the securities or an appropriation on the purchase of like securities within his control.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 23.*]

**2. BANKRUPTCY (§ 140*)—BROKERS—RIGHT OF CUSTOMER TO RECLAIM MONEY.**

Where bankrupts as brokers made a purchase of stock for a customer, but there was no delivery, similar stock subsequently purchased by them will not be presumed to have been bought for such customer, unless there was some express act of the brokers setting it aside for him, and he is entitled to reclaim the money given them with which to make the purchase from their trustee as a trust fund.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In the matter of A. O. Brown & Co., bankrupts. Ex parte Allen R. Smart. Order in favor of claimant.

See, also, 185 Fed. 972.

Ralph Wolf, for trustee.

Kenneth K. Mackenzie, for petitioner.

B. G. Heyn, for claimant Laura Jackson.

Thorndike Saunders, for claimant Samuel C. Scotten.

HAND, District Judge. [1] This cause now comes back upon a separate report of the master. The claimant's position is this: When a customer gives money to a broker to invest, the broker holds it in trust until he has received the securities in which he is to invest it. No mere contract of purchase satisfies the condition upon which he may be permitted to appropriate it, but only the delivery to the broker of the securities. Admitting under Re Brown, Ex parte Herrocks, 185 Fed. 766 (decided November 14, 1910), that the presumption is that a contract of purchase on a stock exchange is represented by some securities in the brokers' hands, even if set off by a contract of sale, yet if the customer affirmatively shows that the purchase was not followed either by a corresponding delivery, or by any other appropriation of securities within the brokers' control, then he has established that the condition has never been fulfilled by which alone the brokers might appropriate the money. While, if such securities ever did come into the brokers' hands, the latter's rights from thence forward are only against the stock (Re Brown, Ex parte First National Bank, 175 Fed. 769, 99 C. C. A. 345), he necessarily can have no right to any stock, until some stock has been received for him. Therefore, it is only necessary for the claimant to show that no stock was in fact borrowed or held to answer for Whitney's "short" sale. If so, then that sale

was no different from a sale made by the brokers themselves without stock and merely for the purpose of "washing" their purchase, as it is called.

To all of this reasoning I agree, nor is it any answer to say that some title passed when the contract of purchase was made. There is indeed no evidence that the other party to that contract had any stock when he made it, and if he did, no title in it would pass until he had set aside the certificates which he appropriated to fill his contract. Therefore the simple question is whether the claimant has affirmatively shown that there never was any stock set aside by the brokers to cover Whitney's "short" sale. The books purport to show all the transactions; they must be supposed to be complete in the absence of evidence to the contrary. They show that from the 24th day of August till the failure the brokers had received and had in possession all told only 380 shares of the stock in question. None of this was borrowed or held to cover Whitney's sale so far as appears on the books. Has the claimant proved the negative of the possibility that some part of it was received upon his purchase? The 30 shares in the hands of Lipper were always on pledge and could not have answered. The 200 shares that came from Boody, McLenman & Co. were never the bankrupts' stock at all. The 100 shares bought for Annis became his on delivery, even though it was converted at once thereafter. There remain the 50 shares received from Ehrich Hochstadter & Co. on the 24th and immediately sold.

[2] It does not appear for whom this was purchased, and the question is whether the customer could have claimed them, had they remained in specie. I think that under Re McIntyre, Ex parte Talbot, 181 Fed. 960, 104 C. C. A. 424, he clearly could not. It was there held that new purchases of similar stock will not be presumed to be in substitution for that already converted. The same rule should apply when the only facts are that a purchase of stock for a customer has not been followed by a delivery. There must be some express act of the broker setting aside other stock to the customer, in order to effect a substitution. Presumptions will not answer.

Therefore Smart has affirmatively proved that there never was in the bankrupts' hands any stock which could answer to the purchase, the purchase is no better than if it had never been made, and the bankrupts have never fulfilled the condition entitling them to the money.

Since there is not now enough money to go around among the claimants, by consent they agree to abate ratably. Let a proper order pass.