## In re PRINCE & WHITELY.

### HAMANN v. STICKLE.

### No. 6425.

Circuit Court of Appeals, Sixth Circuit.

June 7, 1934.

P. L. Thornbury, of Cleveland, Ohio (James Easly, of Cleveland, Ohio, on the brief), for appellant.

E. E. Stearns, of Cleveland, Ohio, for appellee.

Before HICKS and SIMONS, Circuit Judges, and NEVIN, District Judge.

NEVIN, District Judge.

On December 9, 1930, Mrs. C. A. Hamann filed her application in the District Court praying for an order of court directing the receiver for James Hoyt et al., who prior to October 9, 1930, conducted a brokerage and trading business under the firm name of Prince & Whitely, with offices in Cleveland, Ohio, to deliver to her the sum of $5,892.50, with interest, out of the assets of the firm of Prince & Whitely, in his hands as receiver, without prejudice, however, to any and all rights which she might have to the delivery of certain shares of stock and/or cash from any other source in the event the receiver did not have sufficient assets in his hands to comply with such an order of court.

The cause was referred to a special master, who found that Mrs. Hamann was not entitled to the return of her money, and that her application should be dismissed. Exceptions to the report of the special master were overruled and the report was confirmed by the District Court. The cause is in this court on appeal from the judgment of the District Court. It was heard before the special master upon an agreed statement of facts. So far as pertinent, they are as follows: On October 7, 1930, Mrs. C. A. Hamann ordered the Cleveland office of Prince & Whitely to purchase for her 100 shares of General Electric common stock at $58.75 per share. Prince & Whitely confirmed the purchase on that date. The books of Prince & Whitely show that on the morning of October 8, 1930, the 100 shares reported purchased for Mrs. Hamann were used to balance and settle their account for the transactions of October 7, 1930, in General Electric shares and the 100 shares were not actually delivered to Prince & Whitely, nor did they come into their possession. At the close of business on October 7, 1930, Prince & Whitely had only 3 shares of General Electric stock on hand and customers were long 8,537 such shares. On October 8, 1930, at about 2:55 o'clock p. m., Mrs. Hamann delivered to the Cleveland office of Prince & Whitely her check for $5,892.50 in full payment of the purchase price and brokerage commission; the check was immediately presented to the drawee bank, was paid, and the proceeds were deposited in the account of Prince & Whitely. The bank balance of Prince & Whitely remained in excess of the amount of said check continuously to the date of the filing of the involuntary petition in bankruptcy on October 9, 1930. Mrs. Hamann has never received her stock, although due demand has been made therefor. She was not indebted to Prince & Whitely in any way. At the close of business on October 8, 1930, Prince & Whitely had on hand 313 shares and customers were long 8,412 shares and at the time of their suspension on October 9, 1930, there were 545 shares on hand and customers were long 10,400. None of the shares on hand were tagged in any

way to show that they were the property of Mrs. Hamann. The auditor's report of the condition of Prince & Whitely as of October 9, 1930, prepared for the receiver, shows the assets to be less than the liabilities.

The District Court, in its memorandum opinion on exceptions to the report of the special master, found that in the nature of this transaction, Prince & Whitely did not agree to sell 100 shares of General Electric common to Mrs. Hamann, but to buy them for her and deliver them in due course; that the purchase was made, but that bankruptcy intervened before delivery of the stock to her; that at the time of bankruptcy, the brokers had not defaulted upon the transaction, and the claimant had no existing right to rescind. The purchase had been made for her and delivery presumably would have followed in due course, except for bankruptcy. The trial court further held that there was no evidence that the brokers did anything in respect to this purchase other than that which was customary in the nature of the transaction and the usage of the trade, and that when the purchase was made for her account the order was executed and the deal, to the extent of fixing her rights, was consummated. In re Brown et al. (Petition of First National Bank of Princeton, Ill.), 175 F. 769, 770 (C. C. A. 2); In re Walter J. Schmidt & Co. et al., 298 F. 314, 315, 319 (D. C.).

It is contended upon the part of appellant that Prince & Whitely had not only agreed to buy the shares of stock for Mrs. Hamann and deliver them in due course, but that it was their duty to follow up such purchase either by a corresponding delivery or by some other appropriation of securities within the control of the brokers, and that until one or the other of these things had been done the obligation of the brokers to Mrs. Hamann had not been fulfilled, and that at the time of bankruptcy the brokers had defaulted upon the transaction. Appellant insists that the court erred in holding that delivery presumably would have followed in due course except for bankruptcy; that when the purchase was made for her account, the order was executed and the deal, to the extent of fixing appellant's rights, consummated; and that the claimant had no existing right to rescind at the time of bankruptcy.

Appellant relies very strongly upon the case of Ex parte Smart, 189 F. 440 (D. C.) In that case, however, the brokers did not actually make the purchase when they were supposed to do so, though they attempted to correct this by subsequent purchase. In the instant case the stock was purchased, but sub-sequently converted (whether directly or indirectly is not material) by the brokers. Under such circumstances a very different question is presented than in a case where the stock was never purchased in the first instance. Appellant's cause of action was for conversion and not rescission. Bankruptcy in no wise changed the situation.

We are of the opinion that the District Court was correct when it overruled the exceptions to the report of the master, and the judgment of the District Court is therefore affirmed.