ASYLUM OF ST. VINCENT DE PAUL, Respondent, Appellant, *v.* EDWARD J. McGUIRE, Individually and as Trustee in Bankruptcy of the Estate of LOUIS H. AMY et al., Individually and as Copartners under the Name of H. AMY & Co. et al., Respondents.

KATHARINE S. CRAMER, Individually and as Executrix of KATE P. SPENCER, Deceased, et al., Appellants.

Pledge — securities belonging to different parties held for safekeeping by firm of stockbrokers and pledged by said firm as security for loan made to them by bank — when bank, acting in good faith, acquired good title to such securities — bankruptcy of pledgors and sale of part of pledged securities to satisfy such loan — when security holders, whose securities were not sold, must contribute proportionately to reimburse the security holders whose securities were sold.

1. Where the situation of parties to a transaction is equal and one has borne more than his just share of a common burden he is entitled to contribution from others who have been dealt with more fortunately.

2. An owner of securities criminally but effectively pledged by a depositary for his own debt and which have survived sales by the pledgee to satisfy the debt, must make contribution to another owner of securities similarly pledged and which have been sold to pay the common debt.

3. Plaintiff was the owner of bonds which its treasurer, a member of a firm of stockbrokers, had pledged, with other securities left with his firm for safekeeping, with a bank as security for a loan to his firm. Although in each case the pledge of these securities with he bank amounted to larceny, yet the bank, acting in good faith, acquired a lien as security for its loan. The firm of stockbrokers became bankrupt and the bank sold a large portion of the securities in order to secure payment of its loan, realizing from the sale sufficient for that purpose. On the day of sale the owner of certain stock so pledged notified the bank of her rights. Thereupon, the bank did not apply the proceeds of such stock to the liquidation of its debt but put the same in the form of a cashier's check which it is still holding to abide the judgment of the court. As the result of these transactions the bank has realized a small amount in excess of its indebtedness which it has turned over to the trustee in bankruptcy and there are still in the possession of the bank, or of the trustee, the cashier's check and some securities belonging to the appellants herein and other individuals similarly situated who are not parties to this appeal. All of the owners were in precisely the same situation and their respective securities had become subjected to the common burden. The right to contribution here invoked is not dependent upon contract or joint action or original relationship between the parties. It is based on principles of fundamental justice and equity. Under the circumstances, all of the securities which were larcenously pledged with the bank but which have not been sold by it should be sold and the proceeds thereof together with any surplus cash held by the bank or by the trustee in bankruptcy, and also the proceeds of the cashier's check should be held in a common fund, and the parties whose securities were sold should, after the payment of costs and expenses, have a lien upon said fund for reimbursement in the proportion in the judgment specified.

Authorities collated and considered.

*Asylum of St. Vincent de Paul* v. *McGuire*, 208 App. Div. 656, affirmed.

(Argued November 26, 1924; decided January 21, 1925.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the first judicial depart-

ment, entered June 7, 1924, reversing a judgment entered upon a decision of the court on trial at Special Term in an action to determine the rights of the parties therein to certain cash and securities.

*A. L. Humes* and *B. L. Stowell* for Katharine S. Cramer, individually and as executrix, appellant. The owners of wrongfully pledged securities which did not survive the pledge and consequently were not recovered from the thieves are not entitled to contribution from those whose securities survived and were recovered from the thieves. (*Newton* v. *Porter*, 69 N. Y. 133; *Knox* v. *Eden Musee*, 148 N. Y. 142; *Iowa Securities Corp.* v. *Ridgewood Nat. Bank*, 106 Misc. Rep. 335; *Tompkins* v. *Morton Trust Co.*, 91 App. Div. 274; 181 N. Y. 578; *Thomas* v. *Taggart*, 209 U. S. 385; *Matter of McIntyre & Co.* [*Pippey's Case*], 181 Fed. Rep. 955; *Matter of McIntyre & Co.* [*Loeser's Case*], 189 Fed. Rep. 46; *Johnson* v. *Bixby*, 252 Fed. Rep. 103.) The trial court and the Appellate Division were right in denying the plaintiff's claim to " a prior equitable lien on the fund." (*Manhattan Savings Inst.* v. *N. Y. Nat. Bank*, 42 App. Div. 147.)

*William Campbell Armstrong* for Robert Monneron et al., appellants. The decision of the Appellate Division was based on a presumption of unfair dealing on the part of the defendant, respondent, Chase National Bank. (*Matter of Wilson*, 252 Fed. Rep. 631; *Matter of Hollins*, 212 Fed. Rep. 317; *Gorman* v. *Littlefield*, 229 U. S. 19; *Tompkins* v. *Morton Trust Co.*, 181 N. Y. 578.)

*William F. Unger* and *Samuel Rubin* for plaintiff, respondent and appellant. The Appellate Division correctly held that the distribution of the fund must be governed by equitable principles, and that legal title cannot be of controlling importance. (*Matter of Mills*, 125 App. Div. 730; *Gouert* v. *Mechanics & Metals National Bank*, 176 App. Div. 507; *Gouert* v. *Mechanics & Metals National Bank*, 191 App. Div. 854; 233 N. Y. 576;

*Tompkins* v. *Morton Trust Co.*, 91 App. Div. 274; *Matter of Wilson & Co.*, 252 Fed. Rep. 631; *Matter of Toole*, 274 Fed. Rep. 337.) The position of the asylum is equitably superior to that of any of the other claimants, and the application of equitable principles of distribution should result in an award of priority to the plaintiff. (*Lickbarrow* v. *Mason*, 2 T. R. 63.)

*Edward J. McGuire* and *James F. McNaboe* for respondent. The Appellate Division properly held that the Special Term erred in awarding to those of the larceny creditors whose securities survived the sales made by the Chase National Bank in satisfaction of the pledge, the title and possession of such securities with their accumulations. (*Matter of Toole*, 274 Fed. Rep. 337; *Matter of Wilson*, 252 Fed. Rep. 631; *Duel* v. *Hollins*, 241 U. S. 523; *McBride* v. *Potter-Lovell Company*, 169 Mass. 7; *Gould* v. *Central Trust Co.*, 6 Abb. [N. C.] 381; *Whitlock* v. *Seaboard Bank*, 29 Misc. Rep. 84; *Matter of Mills*, 125 App. Div. 730; 193 N. Y. 626; *Gouert* v. *Mechanics Bank*, 176 App. Div. 507; *Tompkins* v. *Morton Trust Company*, 91 App. Div. 274; *Matter of McIntyre* [*Pippey*], 181 Fed. Rep. 955; *Matter of Ennis*, 187 Fed. Rep. 720.)

Hiscock, Ch. J. The important and controlling question on this appeal is the one whether an owner of securities criminally but effectively pledged by a depositary for his own debt and which have survived sales by the pledgee to satisfy the debt, must make contribution to another owner of securities similarly pledged but which have been sold to pay the common debt.

Plaintiff was the owner of bonds of the par value of $64,000. One Amy was its treasurer and he was also a member of the firm of H. Amy & Co., stockbrokers. He pledged plaintiff's securities which had come into his possession as such treasurer with the Chase National Bank as security for a firm loan of $250,000. The appellant Cramer and one Spencer of whom the former is

executrix and the appellants Monneron & Guye each owned securities which had been left with the said firm of Amy & Co. for safekeeping and said firm also pledged these securities with said bank as security for the same loan. The securities of other individuals who are parties to this action were also wrongfully pledged by said firm with said bank but they are not present either as appellants or respondents on this appeal. It is found and conceded that in each case the pledge of these securities with the bank amounted to larceny but that the bank, acting in good faith, acquired a lien as security for its loan.

The firm of Amy & Co. became insolvent. It made an assignment March 5, 1919, and the respondent McGuire was appointed its trustee in bankruptcy, June 9, 1919, on a petition filed March 19, 1919. On March 13, 1919, the bank sold a large portion of securities pledged with it including most of those above referred to in order to secure payment of its loan and realizing from the sale sufficient for that purpose. Amongst the securities which it sold were 100 shares of Western Union stock belonging to the appellant Cramer's testatrix, Mrs. Spencer, and from which sale there was realized the sum of $8,885.50. On the day of the sale, however, Mrs. Spencer notified the bank of her rights in respect of this stock, and, as found by the trial court, the bank did not apply said proceeds to the liquidation of its debt but put the same in the form of a cashier's check which it is still holding to abide the judgment of the court. Out of all of these transactions the result has come that the bank realized a small amount of money in excess of the amount of its indebtedness which has been turned over to the trustee in bankruptcy, and that there are still on hand in the possession of the bank or of the trustee the proceeds of the Western Union stock and securities belonging to each of the appellants and also other individuals similarly situated who are not parties to this appeal.

Under these circumstances the Appellate Division reversing the judgment of the trial court held that all

of the securities of the appellants, both plaintiff and defendants, and of other individuals similarly situated, which had been larcenously pledged with the bank but had survived the sale by the latter of pledged securities, should be sold; that to the fund thus produced there should be added any surplus cash in the hands of the bank or of the trustee in bankruptcy including the proceeds of dividends, coupons, etc., and also the proceeds of the Western Union stock hereinbefore referred to; that the parties whose securities were thus sold or which had been sold by the bank should, after the payment of certain expenses and costs, have a lien upon said fund for reimbursement for the value of their securities which had been sold in either way in the proportion in the judgment specified. This judgment thus results in imposing upon the securities surviving sales by the pledgee a lien for contribution in favor of those whose securities were sold by the pledgee, and there is no question about the method or proportion of contribution which has been adjudged if such contribution is proper.

As the result of this judgment several questions are argued upon the appeal but we find it necessary to consider only two. The plaintiff contends that if the doctrine of contribution is to prevail, its equities are greater than those of the other appellants because its securities were wrongfully turned into the possession of the firm of Amy & Co. by one of its members who, as treasurer of plaintiff, had possession of such securities, whereas the other owners voluntarily deposited their securities with said firm, although only for safekeeping and not as security for the payment of any indebtedness, and that, therefore, it ought to have a prior lien on any fund. We do not agree with this claim. From an ethical or moral standpoint perhaps, it might be said that plaintiff was the victim of a greater breach of trust when its treasurer put its securities in the way of being criminally pledged with the bank than the other parties who had voluntarily deposited

their securities with the stockbrokers for safekeeping. From a legal or equitable standpoint, however, we do not think that this difference in circumstances can be made the basis of any differentiation in the rights of the different parties. In each case the owner of the securities has suffered from the criminal act of the stockbrokers in wrongfully pledging securities with the bank. That is the basis for the claim for equitable relief and in each case it is the same and leads to the same rights.

This brings us to the main question of contribution and we think that the views entertained by the Appellate Division are the correct ones. While the acts of the brokers in pledging the securities were larcenous as to the owners, nevertheless the acts were effective and binding in favor of the pledgee which secured a valid lien thereon for the payment of its indebtedness and the securities thus became subject to a common burden. Thus the final result which becomes the basis of our action was, that by the action of those having possession thereof as governed by the law applicable to a *bona fide* pledgee, the respective securities of all of these owners were validly pledged for the payment of the same debt. All of them were brought into precisely the same situation and their respective securities had become subjected to a common burden. In our opinion it makes no difference here that the process which ended in this result commenced with a criminal act or that there was no original relationship between the different owners and that the pledge of each lot of securities was a separate and distinct transaction. (*Armitage* v. *Pulver*, 37 N. Y. 494; *Robinson* v. *Boyd*, 60 Ohio St. 57, 67; *Chaffee* v. *Jones*, 19 Pick. 260.) The controlling circumstances are that, even though by wrongful and separate routes, the different lots of securities through the acts of a common pledgor reached the same destination where they were lodged in the possession of the same pledgee, validly pledged for the same debt and indisputably subjected to the same burden. That is the situation with which we

[239 N. Y. 375]     Opinion, per Hiscock, Ch. J.       |Jan.,

start and with which we have to deal, and in dealing with it we must remember some of the well-settled principles which govern our consideration.

The right to contribution here invoked is not dependent on contract or joint action or original relationship between the parties. It is based on principles of fundamental justice and equity. (*Wells* v. *Miller*, 66 N. Y. 255; *Cuyler* v. *Ensworth*, 6 Paige, 32.) And of these principles no one is more explict and outstanding than the one that where the situation of parties is equal and one has borne more than his just share of the common burden he is entitled to contribution from others who have been dealt with more fortunately. (*Stowell* v. *Richardson*, 3 Allen, 66; *Manthey* v. *Schueler*, 126 Minn. 87; *Hodgdon* v. *Peet*, 122 Minn. 286.) This is simply the statement in another form of the principle that equality amongst those similarly situated is equity and all of these principles applied to the facts of this case seem irresistibly to lead to the conclusion that where through mere chance, as we assume, one security owner has been made to bear a larger proportion of a common burden than was his just share, he is entitled to call for contribution and assistance.

We suppose that no one will doubt that if the situation of all of these wrongfully pledged securities had been discovered before the sale of any of them, and the owner of one lot had brought an action in equity to have them marshalled and applied *pro rata* to the payment of the indebtedness for which they were pledged, such prayer for relief would have been granted. Such relief would have been based upon obvious principles of equity and justice and it seems to us quite inconceivable that the application of those principles is curtailed or destroyed because before the request for equality of treatment is made the pledgee, as a mere matter of chance, has reached out and taken securities of one holder for sale and left those of another intact.

When we come to the consideration of authorities by

which to test this view we find that the question which we are discussing seems to have come up most frequently in proceedings dealing with the bankruptcy of the pledgor and the cases and decisions are not entirely harmonious although we think their preponderating weight is in favor of the conclusions which we have expressed.

The Circuit Court in *Matter of McIntyre & Co.* (181 Fed. Rep. 955) did express the view that a security owner finding intact his securities which had been wrongfully pledged and then relieved by a payment of the indebtedness through sale of the securities of other owners similarly situated, was entitled to reclaim his securities without contribution. The effect of this decision was somewhat impaired by the fact that the other security owners whose securities had been sold and in whose favor contribution had been adjudged in the court below were not present on the appeal. In addition, the doctrine of the case was impaired by other decisions to which we shall hereafter refer.

The same doctrine appears to have been approved but without discussion or citation of authorities, in *Johnson* v. *Bixby* (252 Fed. Rep. 103).

The cases of *Thomas* v. *Taggart* (209 U. S. 385) and *Tompkins* v. *Morton Trust Company* (91 App. Div. 274; affd., 181 N. Y. 578) involved respective rights of different classes of security owners and the facts were so different than those involved in the present appeal that we do not regard them as authorities on the question we are deciding

Cases in the United States courts announcing views more or less at variance with those of the cases above referred to are *Matter of Wilson & Co.* (252 Fed. Rep. 631); *Matter of Toole* (274 Fed. Rep. 337) and *Matter of Archer, Harvey & Co.* (289 Fed. Rep. 267).

In the first case where contribution was adjudged it was reasoned that the court would not have held as it did in the *McIntyre* case if the owners of other securities which had been wrongfully pledged were present upon

the appeal contending for contribution, and emphasis was laid upon the fact in the *Wilson* case that the securities of those who were seeking contribution were sold after the bankruptcy had occurred. We are unable to see that that fact distinguishes the *Wilson* case in principle from the present case where the sale of the securities occurred after the assignment of the brokers and where all of the unsold securities or their proceeds are still in the possession of the pledgee or of the trustee in bankruptcy. That case, therefore, seems to us to be an authority for our present views.

Its greater significance, however, is due to the fact that in the *Toole* case the Circuit Court approved the doctrine of the *Wilson* case, questioned more or less the decision in the *McIntyre* case and affirmed the rule that in a case where securities belonging to different owners have been unlawfully pledged the situation of the owners is originally equal and that such equality is not disturbed by the fact that the securities of one are sold by the pledgee while those of another survive, and that contribution against the latter should be enforced in favor of the former.

In the *Archer* case the reasoning of the *Wilson* case was approved and the *Toole* case was recognized as disclaiming the interpretation which had at times been put upon the decision in the *McIntyre* case, and as holding that owners of securities in the same class must be given equality of treatment and that the pledgee by satisfying its debts out of some of the pledged securities cannot alter the relative rights of those whose property it held, and the conclusion was approved that in such a case the right to contribution existed in favor of those whose securities had been sold and against those whose securities had survived.

We have been cited to only two cases in the State courts passing directly on this question.

In the first of these (*Gould* v. *Central Trust Co.*, 6 Abb. N. C. 381) it was directly held that under circumstances similar to those here existing the owner of securities which

had been sold by the pledgee would be entitled to contribution from the owner of securities which had not been sold.  While this case was decided at Special Term it was nevertheless decided by an able judge and, so far as we are able to find, its doctrine has never been questioned or overruled and it is, therefore, entitled to consideration.

In *McBride* v. *Potter-Lovell Company* (169 Mass. 7) the principle of contribution which we are upholding was applied in the case of notes of different makers which had been left with note brokers for sale but which had wrongfully been pledged by the latter for their own indebtedness. It was held that the right to contribution existed in behalf of those whose notes first became due and of which the proceeds were applied to the payment of the indebtedness as against those makers whose notes became due later and were paid only in part or not at all.  It was recited in the opinion that the notes had all been wrongfully pledged to secure the same indebtedness; that the liability to contribute did not depend on contract between the parties and was not affected by the circumstance that the notes became due at different times; that the various parties by selecting a common agent who had used his power to place them all under a common liability had virtually all been made sureties for the agent and that it was equitable that the burden of the loss should be measured *pro rata* under the principle that equality is equity.

As we understand it, it is not seriously urged that the operation of the principles which we have applied is in any way impaired by the fact of bankruptcy of the brokers. The securities with which we are dealing did not belong to the brokers and we cannot see that any rights in respect thereof have passed to the trustee in bankruptcy which stand as an obstacle to the application of our views.

As we have stated, the securities which have survived the sales made by the pledgee, or in the case of the Western

Union stock the proceeds of the sale, are still in the hands either of the pledgee or trustee in bankruptcy. They are, therefore, within the control of the court and easily subjected to the doctrine of contribution. It is possible that in such a case as this of the wrongful pledge of different lots of securities some lot which had not been sold and which had been relieved of its burdens by the sale of other securities and the payment in full of the common indebtedness might have become so separated from the situation either by lapse of time or by other circumstances that it would be impossible to apply the doctrine of contribution which we are applying in this case. We, of course, do not attempt to pass upon some such hypothetical case as that. It will be time to consider it when it arises.

The disposition of the questions which we have decided renders it unnecessary to consider other questions which have been argued on the appeal. Our views lead to the conclusion that the judgment of the Appellate' Division should be affirmed, with costs to the respondent McGuire.

CARDOZO, POUND, MCLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; CRANE, J., absent.

Judgment affirmed.