# CIRCUIT COURT OF BALTIMORE CITY.

Filed February 8, 1927.

J. FRANK CHRISTOPHER
VS.
ELLEN MARY GOODWIN, ET AL.

*Frederick J. Singley* for Maryland Trust Co., Receiver.

*Raymond S. Williams* and *E. McClure Rouzer* for creditors.

*Clarence A. Tucker* for Richard A. Froehlinger.

*Raphael Walter* for Bartus Trew and Lillian Trew.

FRANK, J.—

The three petitions above enumerated raise questions of law and fact, having many features in common, and they can be properly treated together. In each case the relief prayed was denied by the auditor in his account, and the matters therein involved are the only ones left open in the administration of the receivership estate of Percy M. Goodwin & Company—all other issues having been finally determined by a decree heretofore filed herein.

I find, as facts, that each of the three petitioners was what may be designated as a "trading customer" of the Goodwin concern; that all of their securities, the return of which is asked for, or as to which priority is claimed, had been pledged by them with Goodwin and repledged by Goodwin prior to the receivership herein; that each such repledge was expressly or impliedly authorized to the extent of the indebtedness of the petitioner to Goodwin, but that in each case there had been an over rehypothecation. In each case such over rehypothecation was unlawful and a conversion. Turner vs. Swartz, 140 Md. 463, 471. In each case also the securities, the return of which is claimed, happened to survive liquidation by the re-pledgee and these securities are in the possession of the receiver herein. In the case, however, of the radio stock, for which the petitioner, Froehlinger, claims to be entitled to reimbursement, it is contended on his behalf that this stock was either never purchased at all or in any event purchased under such circumstances as not to make him liable therefor, and that, instead of being debited as he has been with the purchase price thereof, that debit should be cancelled and the amount of his indebtedness to the receivership estate to that extent diminished. This contention will be considered later.

First. It is contended on behalf of the petitioners that, inasmuch as the securities claimed by them are in the possession of the receiver, they are entitled to the return of them; that the over rehypothecation of them as against the petitioners was a wrongful act rendering the whole transaction illegal and that, even though, by accident or arrangement, their securities happened to survive and were released by the proceeds of the sales of securities belonging to other customers of Goodwin, nevertheless their property in these various securities must be recognized and given effect. That there are authorities for this contention cannot be doubted and these have been

cited and pressed upon the Court with great force. They are as follows:

Johnson vs. Bixby, 252 Federal Rep. 103.

In re McIntire & Co., 181 Federal Rep. 955.

Thomas vs. Taggart, 209 U. S. 385.

In the case last cited the claimant was not indebted at all to the broker and the decision is thus not in point. With the conclusion reached by the others I do not agree. I think that the correct rule is that enunciated by Judge Rose, in the case of Archer, Harvey & Company, 289 Federal Rep. 267, decided by him while sitting in the United States District Court for Maryland. This may be regarded as a leading case on this subject. The same rule will be found laid down in the cases of Wilson & Co., 252 Federal Rep. 631; In re Toole, 274 Federal Rep. 337, and Asylum of St. Vincent de Paul vs. McGuire, 239 N. Y. 375; 38 A. L. R. 1214, *annotation*, beginning on p. 1219. See *XXXVII* Harvard Law Review, 877 and fol., "Rights and Obligations of Customers in Stock Brokerage Bankruptcies," by Reuben Oppenheimer.

Without going into unnecessary detail, it may be said that in each case here involved, the petitioners' securities were repledged, together with the securities of other customers of Goodwin, to secure the entire indebtedness of Goodwin to the repledgee. Upon the appointment of the receiver herein each repledgee proceeded promptly to liquidate his claim by disposing of the securities so held by him in pledge. As a consequence, the securities of certain of the customers of Goodwin were sold and certain securities survived the liquidation. What is the just and equitable rule which should govern the relative claims of all the customers whose securities had thus been re-hypothecated jointly? The securities sold to liquidate the indebtedness of Goodwin in each case would be selected by the pledgee, either by chance or accident, or possibly, as clearly appears in the Froehlinger case, as a result of the demand of a particular customer that his securities be not sold. It is just and equitable that those whose securities thus survived the liquidation should be saved whole and that the entire loss should fall upon those whose property had been sacrificed to the common purpose of liquidating the indebtedness, as security for which all had been repledged? This, as above indicated, is the rule contended for by the petitioners. On the other hand, would it not be fairer and more just that all of those who had suffered from the common wrong, the over-rehypothecation of their securities, should share equally in the final result of the payment of the indebtedness, and that those whose securities were saved should be required to contribute *pro rata* to the loss of those whose securities were sold? The latter is the rule adopted by Judge Rose and the other authorities last above cited.

The opinion of the Court of Appeals of New York in the recent case of the Asylum of St. Vincent de Paul vs. McGuire, supra (1925) delivered by Chief Judge Hiscock, admirably states the reasons for the rule here to be applied. In that case the plaintiff was the owner of certain bonds; its treasurer, who was also a member of a firm of stock brokers, without authority pledged the plaintiff's bonds which had come into his possession as such treasurer with the Chase National Bank, as collateral security for a loan to his firm in the amount of $250,000. Various other persons had left securities with the stock brokerage firm for safe keeping and these securities were likewise pledged with the bank as collateral for the same loan. There can be no question of the wrongfulness of the pledging in this case. There was no color of right on the part of the stock broker so to do. Said Chief Judge Hiscock: "While the acts of the brokers in pledging the securities were larcenous as to the owners, nevertheless the acts were effective and binding in favor of the pledgee, which secured a valid lien thereon for the payment of its indebtedness, and the securities thus become subject to a common burden. Thus, the final result, which becomes the basis of our action, was that by the action of those having possession thereof, as governed by the law applicable to a bona fide pledgee, the respective securities of all of these owners were validly pledged for the payment of the same debt. All of them were brought into precisely the same situation, and their respective securities had become subjected to a common burden. In our opinion it makes no difference here that the process which ended in this result commenced with a criminal act, or that

there was no original relationship between the different owners, and that the pledge of each · lot of securities was a separate and distinct transaction. * * * The controlling circumstances were that, even though by wrongful and separate routes, the different lots of securities. through the acts of a common pledgor, reached the same destination, where they were lodged in the possession of the same pledgee, validly pledged for the same debt and indisputably subjected to the same burden. * * *

"The right of contribution here invoked is not dependent on contract or joint action, or original relationship between the parties. It is based on principles of fundamental justice and equity. * * * And of these principles not one is more explicit and outstanding than the one that where the situation of parties is equal, and one has borne more than his just share of the common burden, he is entitled to contribution from others who have been dealt with more fortunately. * * * This is simply the statement in another form of the principle that equality among those similarly situated is equity, and all of these principles applied to the facts of this case seem irresistibly to lead to the conclusion that where through mere chance, as we assume, one security owner has been made to bear a larger proportion of a common burden than his just share, he is entitled to call for contribution and assistance."

"We suppose that no one will doubt that if the situation of all of these wrongfully pledged securities had been discovered before the sale of any of them, and the owner of one lot had brought an action in equity to have them marshalled and applied *pro rata* to the payment of the indebtedness for which they were pledged, such prayer for relief would have been granted. Such relief would have been based upon obvious principles of equity and justice, and it seems to us quite inconceivable that the application of those principles is curtailed or destroyed because, before the request for equality of treatment is made, the pledgee, as a mere matter of chance, has reached out and taken securities of one owner for sale and leave those of another intact." Cf. Records vs. McKim, infra.

The opinion then goes on to approve the decision in the matter of Archer,

Harvey & Company, supra, and also cites with approval the Massachusetts case of McBride vs. Potter-Lovell Co.. 169 Mass. 7.

In the Archer, Harvey case, supra, Judge Rose approves the reasoning of the Wilson case, and the Toole case was recognized as disclaiming the interpretation which had at times been put upon the decision in the McIntire case, cited by petitioners, and as holding that owners of securities in the same class must be given equality of treatment and that the pledgee by satisfying its debts out of some of the pledged securities cannot alter the relative rights of those whose property it held. The conclusion was reached that in such a case, the right of contribution exists in favor of those whose securities had been sold and against those whose securities had survived. In McBride vs. Potter-Lovell Co., supra. the principle of contribution was applied in the case of notes of different makers which had been left with brokers for sale, but had wrongfully been pledged by the latter for their own indebtedness. It was stated in the opinion that the notes had all been wrongfully pledged to secure the same indebtedness; that the liability to contribution did not depend on contract between the parties and was not affected by the circumstance that the notes became due at different times. That the various parties by selecting a common agent who had used his power to place them all under a common liability had virtually all been made sureties for the agent and that it was equitable that the burden of such should be measured *pro rata* under the principle that equality is equity.

In Records vs. McKim, 115 Md. 299, the customer of an insolvent brokerage firm, whose securities had been wrongfully rehypothecated was permitted by the Court to redeem his securities by paying to the pledgee bank the *loaning* value thereof. The pledgee bank had on deposit funds of the insolvent and certain securities of the insolvent had been pledged to it, in which the receiver had an equity. It was held that the owners of the rehypothecated securities were entitled to have the funds and securities available to the bank marshalled and applied in such a way as to relieve their property as far as practicable and were entitled to be subrogated to the lien

of the bank upon the assets so surrendered to the receiver. The appellant claimed that in determining his proportion of the assets to which the right of subrogation applied, only the creditors who redeemed their securities should be considered, "But," said Judge Urner for the Court (p. 307), "we are unable to discriminate upon principle between this class of creditors and those whose repledged collateral was sold for the purpose of satisfying the bank's claims against the firm. Each class has contributed in the form of cash advanced or securities appropriated towards the payment of debts which would otherwise have absorbed the assets in reference to which the right of subrogation is invoked, and the creditors of both classes were entitled to the benefit of that principle in so far as their claims represented collateral repledged with the institution which released the assets in question to the receiver. The amount which the appellant's claim is to be allowed out of the fund produced by these assets, after charging against it the sum advanced by the receiver to the bank, as previously stated, must be ascertained by such an apportionment as would be required if all the creditors in the situation just described had asserted the same right of participation."

If each of the customers of Goodwin had advanced the loanable value of his securities to the pledgee none could have been sold and each would have gotten his securities back. This was not done and, in the case of all of the customers whose securities went to secure a particular loan, the Court is unable to discriminate upon principle between this class of creditors (i. e., those whose securities still exist *in specie* in the hands of the receiver) and those whose repledged collateral was sold for the purpose of satisfying the pledgee's claims against Goodwin.

The better rule, then, is that where securities belonging to different owners are validly but wrongfully pledged by a third person and some of the securities, or the funds realized therefrom, survive a sale by the pledgee, the loss is to be borne *pro rata*, and that those whose securities have been sold are entitled to contribution from those whose securities, or funds received on a sale thereof, have survived the sale by the pledgee.

38 A. L. R. note at 1219, and cases in this note and also authorities, supra.

Second. There remains to be considered the contention of the petitioner, Froehlinger, that he cannot rightfully be charged with 300 shares of radio stock, that his apparent indebtedness should be reduced by the amount of such charge, leaving his true indebtedness less than one thousand dollars.

It is conceded that the order for the purchase of the stock was given by Froehlinger to Goodwin, but it is claimed that the order was given at a time when Goodwin was actually insolvent and either knew or must have known that fact; that all that Goodwin did was to give Lanahan and Company an order to buy the stock, that Goodwin was already largely indebted to Lanahan, and, therefore, was never in a position to deliver the stock to Froehlinger on demand.

This conclusion is a mere assumption. Had Froehlinger before the receivership tendered to Goodwin the amount due by him taking into account the purchase price of the radio stock, it is not at all clear that the stock would not have been delivered to him. Even though Goodwin was insolvent, the Lanahan loan was amply secured and there is no reason to believe that this radio stock would not have been surrendered by Lanahan upon payment of the full purchase price thereof.

A tender of the amount due by him to Goodwin, made by Froehlinger prior to the appointment of the receiver, would have entitled him to the delivery of the stock and upon said failure to deliver, he would have been in a position to claim all remedies and priorities determined in Turner vs. Schwartz, 140 Md. 465. In fact, Froehlinger's tender was not made until after the appointment and qualification of the receiver. Thereupon, *ipso facto*, the rights of all parties in interest had become crystallized and fixed. All customers in the same position as Froehlinger would have the same rights as he claimed and no action by him thereafter could change those relative rights. If, as he asserts, Goodwin had been insolvent for four or five years, it is most probable that all of that concern's customers would be entitled to the same equities growing out of such insolvency as Froehlinger demands only for himself. This contention, therefore, must be denied.

Appropriate orders to make effective these rulings will be signed.