**PHILLIPS et al. v. BAKER et al.**

No. 11970.

Circuit Court of Appeals, Fifth Circuit.

Jan. 13, 1948.

Rehearing Denied March 12, 1948.

Edward S. Boyles, Willard L. Russell, M. U. S. Kjorlaug, Albert J. DeLange, T. B. Blanchard, Walter F. Brown, Pierce E. Holmes and Edgar E. Townes, Jr., all of Houston, Tex., for appellants and appellees, H. A. Phillips, trustee in Bankruptcy of the estate of B. Frank Sterling and Harry V. Baker, a partnership, doing business as Sterling & Baker, and others, bankrupts, and others.

Murray G. Smyth and C. H. Chernosky, both of Houston, Tex., for appellees and appellants, Hines H. Baker, and others.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants and appellees, except the trustee, are reclamation claimants in a stockbrokers' bankruptcy proceeding. The issues and controversies argued below and here arise from the fact, as found by the referee and the district judge, that at the time of the bankruptcy the securities to which the reclamation claims relate were not only under pledge to Post and Flagg in New York, but were in aggregate amount "far less than the amount of the reclamation claims filed and being prosecuted."

As to all of the appellants, except Allison, Wilbur and Green, whose claims to reclamation were denied altogether, their claims being allowed as unsecured, and Borger and Rossi, whose claims for reclamation were denied in small part, and as to all of the appellees, the referee found that they had sufficiently traced and identified their stocks and allowed their reclamation claims.

The district judge did not disturb these findings, and, except as to Allison et al. and Rossi et al., no questions of tracing and identification are presented for our consideration.

The major controversy we are to determine arises out of the fact that the referee, finding that all of the reclamation claimants were subject to the burden of the loan to Post and Flagg, classified them as "A" and "B" in accordance with whether or not at the time of the bankruptcy they were indebted to the bankrupt and held that the "B" claimants' stocks must first be exhausted before stocks of the "A" claimants could be resorted to.

Baker, et al., who had been classified as "B" claimants, Allison, et al., whose reclamation claims had been denied, Rossi and Borger, who, though given preferential classification on all of their claims except a small part, and some others on differing grounds, filed petitions for review. None of these petitioners, however, questioned or complained of the referee's findings, that all of the claimants classified as "A" and "B" had traced their stocks and were entitled to be treated as reclamation claimants. Allison et al. complained because their reclamation claims had been denied in full; Borger and Rossi because they had not been allowed preferential payment as to the whole of their claims; Hines Baker and Bishop et al. because, (1) they had been subjected to the burden of the loan, and (2) because they had been classified as "B" claimants and made first subject to its burden. E. G. Miller, in addition to complaining with Baker and Bishop et al. of his class "B" classification, complained also of the referee's failure to properly credit him for the conversion of part of his stock.

The district judge, disagreeing with the referee's finding that the stocks of all of those who had been classified as "B" creditors were subject to the burden of the loan, reversed the referee's order as to them, ordering instead that the stocks standing in the names of these claimants be delivered to them upon the payment of their indebtedness entirely freed from the burden of the loan. Finding that Miller was entitled to credit for the stock converted, he sent that issue back to the referee for further findings. Of the opinion as to the other findings and orders of the referee, including the referee's finding on further reference as to

the credit to be allowed Miller for the conversion of his stock, that the referee was right, he affirmed these orders.

Here there are five classes of appeals, one principal and four subordinate. The principal appeal is that of claimants Acker and 28 others from the order of the district judge freeing entirely from the burden of the Post and Flagg loan the securities of appellees, Baker, Miller and Bishop et al., who had been classified by the referee as "B" claimants and made first subject to the loan's burdens.[1]

Of the four subordinate appeals, one is the appeal of Bayless and 10 others, who were classified by the referee as "B" claimants, their stock subjected first to the burden of the loan, but relieved by the court entirely from the burden of the loan. Not, of course, complaining of that shift of for-

tune, they still feel themselves aggrieved by the failure of referee and court to allow them as offsets against their indebtedness the value of stocks of theirs which had been wrongfully converted.[2]

Another is the appeal of E. G. Miller, who, allowed credit for conversion of his shares as to their value at bankruptcy, complains that credit should have been allowed him as of their value at the date of the pledge.[3]

A third is the appeal of Allison, Wilbur and Green from the findings and orders of referee and judge disallowing reclamation claims and classifying them instead as unsecured creditors.[4]

The fourth is the appeal of Borger and Rossi from the failure of the reference and court to allow their reclamation claims in full and freed from the burden of the loan.[5]

---

[1] This difference in result comes from the refusal of the district judge to accept findings of the referee that the stocks of Baker et al. were subject to the Post and Flagg lien and his finding, on the contrary, that they were not.

[2] This issue arises out of the fact that below there was an apparent confusion both as to the scope of the issues before the referee in respect to these claimants and as to the value and effect of statements made by counsel for these claimants as to their claims for conversion credits. Here these appellants insist that they neither waived their claims for credits on account of the conversion of these stocks nor their right to prove these credits up as an offset to their indebtedness. Counsel for Acker et al, who, though appellants on the main appeal, are appellees as to Bayless' appeal, seem to take the position that the bankruptcy court was without jurisdiction to determine whether these securities had been lost and, therefore, what credit should be allowed on account of them, and they also claim in effect that the counsel for the appellants Bayless et al. waived their right to prove these credits up.

[3] The issue here arises out of the fact that the certificate in question, on September 15, 1937, when it was pledged, had a considerably higher market value than on November 2, 1937, the date of the bankruptcy.

[4] The controversy here arises out of the fact that though at bankruptcy the stocks claimed by these appellants were on hand in their names, the referee found

that each of these appellants had ordered stocks sold and taken credit for the sale price on the books of the bankrupt. The appellants, on the other hand, pointing to the fact that the stocks were not actually sold but were on hand at bankruptcy, that Sterling and Baker kept a "stock account" where instead of making actual transactions they merely made book entries, insist that their orders to sell were not executed but were merely bucketed or sold to the brokers themselves, that they must, therefore, be disregarded and that appellants must be allowed to recover their stock freed from the burden of the loan.

[5] This appeal, though it involves a small amount of money, is fought with tenacity and conviction. Its gravamen is that the following facts are undisputed: At date of bankruptcy there were 297 shares of American Republics Corp. stock on hand; of these 297 shares, the evidence definitely established that 200 of them were the 200 shares which these claimants had bought on Oct. 21, 1937, and further that of those who had purchased the stock only these claimants were entitled to be and were classified as entitled to preferential treatment and that to hold that they had not fully traced their shares is in the face of the decisions they cite. Re: Kardos, appeal of Miss Alice Ablett, 2 Cir., 27 F.2d 690; In re Rosenbaum Grain Corp., 7 Cir., 112 F.2d 315; Southern Cotton Oil v. Elliotte, 6 Cir., 218 F. 567; Gorman v. Littlefield, 229 U.S. 19, 33 S.Ct. 690, 57 L.Ed. 1047; Sexton v. American Trust Co., 8 Cir., 45 F.2d 372, 76 A.L.R. 781.

■ Before proceeding to deal with the separate classes of appeals, a word or two of general application will be in order. The first and most important is that in dealing with the questions presented for our decision, we are not dealing with the ordinary situation of an appeal from findings of fact of a district judge which, under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, "shall not be set aside unless clearly erroneous". We are, on the contrary, dealing with findings made by the district judge, adverse to those of the referee, in respect to matters primarily remitted for decision to the referee and as to which it is provided[6] that "the judge shall accept his findings of fact unless clearly erroneous". Under that rule "we have the same duty as the district court to accept the referee's findings, unless they are clearly erroneous".[7] Under that rule, we, of course, take into consideration the fact that the district judge has refused to accept the referee's findings. But we do so not in determining whether the district judge's findings are clearly erroneous for that is not the matter before us. We do it in determining whether the referee's findings are, and we do this with the clearest recognition that the duty to determine whether the referee's findings "must be accepted" and whether the district judge has erred in not accepting them is not the district judge's but ours.

A second matter of general application to be kept in mind is that no challenge is made here of the correctness of the findings of the referee, affirmed by the district judge, that appellants and appellees, except Allison, et al., and to a small extent Rossi and Borger, have traced and identified their stocks and are entitled to the treatment of reclamation claimants who have done so. Neither is there any challenge here of the referee's affirmed findings as to appellants: (1) that they are subject to the burden of the loan; (2) that, however, they were not indebted at the time of the bankruptcy; (3) that their stocks were not rightfully pledged; nor any as to his affirmed conclusions of law that they are entitled to an "A" classification.

Coming then to the main appeal of Acker et al., we find three questions presented. The first is: Are the referee's findings, that the stocks of Baker, Miller and Bishop et al. were subject to the burden of the loan, to be set aside as clearly erroneous? The second is: If those findings are to stand, are his findings, that these appellees were indebted at the time of the bankruptcy, to be set aside as clearly erroneous? The third is whether, if these findings are to stand, the referee's conclusion that because they were indebted, the appellee's stocks were rightfully pledged and they must be placed in Class "B", their stocks first subject to the burden of the loan, was right.

■ Of the first it is sufficient without further increasing the length of this opinion by quotations from the record to say that an examination of it in the light of the settled principles of law governing situations of this kind, whether the decision is put, as in Texas,[8] on principles of estoppel, or under the Uniform Stock Transfer Act,

---

[6] General Order of Bankruptcy 47, 11 U.S.C.A. following section 53.

[7] Mergenthaler v. Dailey, 2 Cir., 136 F.2d 182, 184.

[8] Sackenreuther v. Winston, Tex.Civ. App., 137 S.W.2d 93; Gillette v. Houston National Bank, Tex.Civ.App., 139 S.W.2d 646; Monroe v. Wharton Bank & Tr. Co., Tex.Civ.App., 155 S.W.2d 636; and Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63, 68, in which case Commissioner (now Mr. Justice) Smedley, after quoting from 13 Am. Jur., p. 423, Sec. 350, and many cases from Texas and from other jurisdictions, said, with the clarity and precision and the quality of sequence and summing up which, distinguishing his judicial utterances, have enriched Texas law: " * * * what the above cited authorities hold is that, by reason of the principle of estoppel, the owner of stock who assigns his certificate in blank and intrusts it to another cannot enforce his ownership against, has no cause of action against, an innocent pledgee or purchaser of the stock for value from the party to whom the certificate is intrusted. In some of the decisions it is said that title to the stock is transferred to the innocent purchaser by estoppel, in others that the owner is estopped to assert his own title or to question the title of one who acquires the stock from the apparent owner. But whether title passes or the owner of the stock is estopped to assert title, it necessarily is true that a cause of action for conversion does not arise if the

as in New York [9] where the pledging was done, leaves us in no doubt that the referee was right in holding that the secret limitations which appellees sought to impose on their broker, while unquestionably binding on him, could not, and did not, bind Post and Flagg, the New York pledgees. It is equally true that the request to Post and Flagg that the stocks be kept in customers' instead of in street names in no manner gave notice of any secret limitations upon the brokers' right to pledge.[10] Certainly the fact, which some of the appellees made a good deal of, that after bankruptcy the brokers and some of the holders of the stocks held in customers' names, sought to obtain from Post and Flagg preferential treatment, particularly for stocks of employees of the Humble Company whose subscription rights had been conditioned on their keeping a certain proportion of their shares in their own names, could not give the holders of these stocks freedom from the burden of the loan or a preference over other stocks so burdened.

■ When all of the confusion and involvements of the controversies, created by the contentions between bankrupt corporation and bankrupt partnership and the strivings with each other of the holders of stocks struggling in the ruins of these bankruptcies to salvage what each can, are stripped away, two things stand out. One of these is that all of the claimants executed stock powers which vested apparent authority in the bankrupt partnership to pledge their stocks and that the limitations on that authority, which they now insist upon as relieving them from the burden of the loan, were secret and undisclosed. The other is

that the referee's findings made after long and laborious hearings and equally long and laborious study and analysis of the complex and lengthy record of these hearings, that all of the stocks were subject to the burden of the loan, must be accepted not only as not clearly erroneous but as clearly right. The district judge, therefore, erred in freeing appellees' stocks from the burden of the loan.

■ When it comes, however, to the referee's finding No. 10,[11] that appellees were indebted to the bankrupts at the time of the filing of the petition in bankruptcy, that, therefore, their stocks were rightfully pledged, and that they must be classified as Class B claimants, inferior in equity to appellants, we think it quite clear that the referee has erred. He fell into this error when, taking Meyer on Stock Brokers as his gospel, and Sec. 166(1), p. 641, as his text, instead of taking as "the decisive factor in determining whether a claimant is in class A or class B whether the pledge of his securities by the broker has been with or without right, not whether the customer owned his securities outright or on margin", he took the author's statement, "But the recent tendency of the courts is to regard the pledge of securities which have been fully paid for as wrongful and that of securities against which the claimant owes an indebtedness to the broker as rightful", as an invariable rule having the force of a command. By doing this, that is making the fact of indebtedness vel non the determining factor as to, instead of evidence bearing on, the question of rightful or wrongful pledging,[12] and thus allowing the tail to wag the dog, he placed appellees in

facts existing at the time the stock is sold or pledged are such that the owner may not thereafter assert paramount title to the stock."

[9] Meyer, "The Law of Stock Brokers and Stock Exchanges", Sec. 163, p. 629; Sec. 75, p. 344 et seq.

[10] Meyer, "The Law of Stock Brokers and Stock Exchanges", Sec. 75, pp. 348-9.

[11] "I find and hold that where the claimant was indebted to the bankrupts—Sterling and Baker Securities Corporation, in connection with the Post and Flagg account, or was indebted to Sterling and Baker, the partnership, for any sum

whatsoever at the time of the pledging of said securities with Post and Flagg, or that became indebted to the bankrupts— Sterling and Baker Securities Corporation, in connection with the Post and Flagg account, or became indebted to Sterling and Baker subsequent to the pledging of said stocks, and were indebted to said bankrupts at the time of the filing of the petition in bankruptcy (Nov. 2, 1937), were rightfully pledged, and said claimants are classified as Class "B" claimants."

[12] "If a customer who owns his securities outright has given the broker permission to pledge the securities, his cus-

class B in the face of the fact that the overwhelming, indeed the undisputed, evidence showed that the pledge of their securities to Post and Flagg by the broker had been wrongful, that is contrary to their instructions. As Meyer points out, in discussing the rule of priority among claimants classes A and B, the application of the rule is not so simple. "The decisions on this subject are conflicting and in many instances based on more or less arbitrary presumptions and fictions".[13]

In addition to the apparent conflicts among the federal cases discussed, Meyer points out a conflict as to the effect of the rehypothecation of a customer's securities for an amount in excess of the customer's indebtedness. In his text at page 647, he undertakes to say that such a wrongful repledging, though wrongful and criminal, would not be such as to entitle the customer to be placed in class A, but in his supplement, Volume 2, he cites as contrary to this view the well reasoned case, with which we agree, of Vance Lumber Co. v. Fraser, 162 Wash. 347, 298 P. 439. With authorities in this condition, the only point of complete agreement between them being that equity is to be done, we hold that it is not equity but inequity to classify customers as A and B on the basis of a rigid rule that the fact of a customer's indebtedness to the broker makes rightful a pledge by the broker made contrary to the customer's instructions, or for an amount in excess of what the customer owed him, in the absence of an agreement, express or implied, to a general repledging for the broker's indebtedness.

■ The referee was wrong too in his conclusion of law that orders given by customers to purchase or sell stocks which were not executed but were bucketed by the bankrupt, that is not executed at all or executed by purchase from or sale to themselves, resulted in creating an indebtedness. The law is settled to the contrary.[14]

On the main appeal then, the judgments appealed from are reversed and the causes remanded with directions to place appellees in class A but subject to the burden of the loan and subject only to such indebtedness as may exist as a result of actual, as distinguished from bucketed, transactions.

The issues tendered on each of the four subordinate appeals are in narrow compass, and we can dispose of them in short order.

As to Bayless, et al., it seems perfectly plain to us that the orders denying them credit for losses sustained through conversion of their stocks were based upon a misconception of the evidence as to the fact and effect of the agreements of counsel, which it is claimed waived their clients' rights to such credits. They are based, too, on a misconception of law as to, the failure of counsel to tender sufficient proof to make at least a prima facie showing for the recovery they sought. These orders, therefore, are reversed and the cause is remanded as to these claims with directions to determine and allow these appellants the

---

tomer will be placed in class B for the reason that the pledge has become rightful." Meyer on "Stockbrokers and Stock Exchanges", p. 643. Cf. In re: Green, 2 Cir., 11 F.2d 676; In re: Toole, 2 Cir., 274 F. 337.

[13] "The courts have held that there is no hard and fast rule as to when the hypothecation of a customer's securities is rightful and when it is wrongful, and accordingly no hard and fast rule as to which customers should be placed in class A and which in class B. 'Some flexibility', said the Circuit Court of Appeals for the Second Circuit,* 'is necessary in the application of the principle. Equities cannot always be measured by a hard and fast rule. So there are different factors to be taken into consideration in weighing equities. Technical want of authority in the bankrupts to hypothecate might, in itself, establish wrongful hypothecation; but still the question of authority might be so doubtful that a claimant in whose case the want or power was unquestionable might have superior equities.' The admitted flexibility of the doctrine is the sole manner in which the apparently conflicting decisions of the courts can be reconciled."

"* In re: Ennis ex parte Bamford, 2 Cir., 187 F. 720, at page 723, appeal dismissed 226 U.S. 623, 33 S.Ct. 110, 57 L.Ed. 386."

[14] Meyer, "Stockbrokers and Stock Exchanges", Sec. 166(e)—"Customers Whose Orders Have Been Bucketed", p. 647; also Secs. 50 & 51, pp. 275, 279 et seq. Cf. In re: Tracy, 2 Cir., 191 F. 810; Leonard v. Hunt, 1 Cir., 36 F.2d 13.

credits they are entitled to on their indebtedness on account of losses sustained through conversion of their securities.

On the appeals of Allison, Wilbur and Green, it is sufficient to say that what we have said above with regard to the bucketing of orders applies in full force to the orders to sell sent in by these appellants but bucketed by the bankrupts. The orders rejecting appellants' reclamation claims and classifying appellants as unsecured creditors are erroneous. They are reversed and the cause is remanded with directions to allow these claims as reclamation claims subject to the burden of the loan, and after an examination of their status as class A or class B claimants, in the light of the principles herein announced, classify them subject to their indebtedness in accordance therewith.

As to the Borger and Rossi appeals, an examination of the record convinces us that upon the undisputed facts these appellants have identified and traced their stocks and that their claims should be allowed in full as reclamation claims and placed, subject to the burden of the loan, in class A.

 On Miller's appeal, while it is settled law that the customer is entitled to offset the value of converted securities against his indebtedness to the broker, and that a wrongful hypothecation of securities is a conversion, there is some conflict of opinion as to the date for measuring the damages in such case. Meyer states the rule to be[15] that a wrongful sale differs from a wrongful rehypothecation in this,

that in the first case an action for substantial damages arises at once, whereas in the second case, tender and demand by the customer are a prerequisite to the maintenance of such action. Under this rule the date of the bankruptcy would be the proper measure of damages and many cases so hold. On the other hand, In re Salmon Weed & Co., 2 Cir., 53 F.2d 335, 79 A.L.R. 379, cited in Meyer, Cumulative Supplement, Vol. 2, Sec. 138, at p. 210, the Circuit Court of Appeals for the Second Circuit, in a carefully considered opinion, adopting and applying the Pennsylvania rule, comes firmly out for the view that the wrongful repledging is a conversion and the cause of action for substantial damages arises on that date with an option to the customer to recover damages based at least on the value of the property on that date. The conversion in question here occurred in Texas, and we are pointed to no Texas decision choosing between the rule criticized and that adopted in the Second Circuit. In view of the fact that the situation presented in this case is one of a common peril and common loss, and an equitable effort to distribute the loss fairly and justly,[16] it seems to us that the better rule for application here as to all the claimants having offsets for stock conversion would be to take the date of bankruptcy as the referee and the district judge did.

The judgment on Miller's appeal is affirmed. The judgments appealed from, except on Miller's appeal, are reversed and the cause is remanded for further proceedings in accordance herewith.

---

[15] Cf. Meyer, supra, Secs. 136 and 138.

[16] In Vance Lbr. Co. v. Fraser, Goodwin & Colver, 162 Wash. 347, 298 P. 438, 443, the court said:

"The customers in the case at bar are all within the same class. The pledges of the securities of each were wrongful. There was neither express authority or implied authority to pledge the margin customers' stock in excess of the indebtedness of such customers to the respondent. There was no authority to pledge the appellant's stock in whole or in part. The situation, as stated above, of the parties is equal, and for the reasons given the rule observed by the trial court should be followed.

" 'Where the situation of parties to a transaction is equal and one has borne more than his just share of a common burden he is entitled to contribution from others who have been dealt with more fortunately.

" 'An owner of securities criminally but effectively pledged by a depositary for his own debt and which have survived sales by the pledgee to satisfy the debt, must make contribution to another owner of securities similarly pledged and which have been sold to pay the common debt.' (Syllabus) Asylum of St. Vincent de Paul v. McGuire, 239 N.Y. 375, 146 N.E. 632, 38 A.L.R. 1214."