**MONROE et al. v. WHARTON BANK & TRUST CO. et al.**

**No. 3853.**

Court of Civil Appeals of Texas. Beaumont.

Oct. 16, 1941.

Rehearing Denied Nov. 5, 1941.

Bennett Lay, Edward S. Boyles, and W. L. Russell, all of Houston, for appellants.

Jas. A. Baker, Jr., Tom M. Davis, Baker, Botts, Andrews & Wharton, and Stewart & DeLange, all of Houston, for appellees.

O'QUINN, Justice.

This suit was brought by Humble Oil & Refining Company as an action in interpleader in the Fifty-Fifth District Court of Harris County, Texas, against appellees, Wharton Bank & Trust Company, a Texas corporation, M. J. Monroe, Delbert E. Ferris, Ezra L. Whitacre, Alva C. Ellisor, a feme sole, Mrs. J. T. Patterson, and her husband, J. T. Patterson, Barney L. Dodson, Sidney Douglas Lester, Charles H. Ebel, E. E. Newnham, Henry Middlebrook Hopkins, Sam R. Gribble, C. D. Osburn, Lum Price, and H. A. Phillips, trustee of the estate of Sterling & Baker, bankrupts, a co-partnership composed of B. Frank Sterling and Harry V. Baker, bankrupts, and for cause of action alleged, briefly:

That on various dates it, Humble Oil & Refining Company, plaintiff, had issued 467 shares of its common stock to the appellants, three shares of which were issued to Sterling & Baker; that on about February 25, 1938, defendant (appellee here) Wharton Bank & Trust Company presented to it, plaintiff Humble Oil & Refining Company, a request for transfer on its books of the certificates representing the 467 shares of stock and requested that new certificates for same be issued in its, the bank's, name; that, with the exception of the certificate representing the three shares of stock issued to Sterling & Baker, each of the certificates so presented was accompanied by a form of assignment or stock transfer power bearing the purported signature of the person (defendant) in whose name such certificate was originally issued; that the defendant (Wharton Bank & Trust Company) at such time advised plaintiff (Humble Oil & Refining Company) that all of the 467 shares of stock were deposited by said Sterling & Baker prior to their bankruptcy with said defendant Bank as collateral security for a $20,000 demand note of date August 1, 1937, executed by said Sterling & Baker; that on November 2, 1937, Sterling & Baker were adjudicated bankrupts by the United States District Court at Houston, Texas, and that controversies had arisen among the original owners of said stock and subsequent claimants of said stocks, bonds and other securities pledged by said various owners with said Sterling & Baker, and re-pledged by said Sterling & Baker to various

banks, and brokerage houses, including the defendant, Wharton Bank & Trust Company, as purported security for the obligations of said Sterling & Baker; that said defendant, Wharton Bank & Trust Company, in demanding the transfer of said stock into its name advised it, plaintiff, Humble Oil & Refining Company, it would be liable in damages in the event it refused or failed to make such transfer of said stock.

Plaintiff, Humble Oil & Refining Company, further alleged that it had been notified in writing by the original owners of the 464 shares of stock, that such owners were claiming, and had been claiming since November 2, 1937, that they were still the true owners of the stock represented by the respective certificates originally issued to them and then standing in their names on the plaintiff, Humble Oil & Refining Company's books, and that said original owners had requested and demanded that it make no transfer of such stock certificates out of their names nor issue any new certificates in lieu thereof, asserting that any such transfers and issuance of new certificates would be at its, Humble Oil & Refining Company's peril.

Plaintiff company further alleged that on February 1, 1938, it was furnished by the defendants (other than Wharton Bank & Trust Company) with what purported to be a copy of a letter dated May 6, 1936, written by Sterling & Baker to Wharton Bank & Trust Company and referring to collateral loans made or to be made to Sterling & Baker, in which letter it was stated that the securities pledged (by Sterling & Baker to Wharton Bank & Trust Company) "are carried for the account of customers, and are not the property of the firm or of any of its partners"; that by reason of said letter of May 6, 1936, and other circumstances, plaintiff was doubtful and apprehensive of the rights of the defendant Wharton Bank & Trust Company on the one hand, and of the remaining defendants on the other, in and to the stocks represented by said stock certificates, and as to which were entitled to the possession thereof.

The petition of plaintiff, Humble Oil & Refining Company, contained other allegations appropriate to a petition in interpleader, and concluded with a prayer that the defendant Wharton Bank & Trust Company and the other defendants to whom the stock was issued be required to interplead among themselves, and that plaintiff be discharged from all liability.

The material facts alleged by plaintiff Humble Oil & Refining Company were admitted by defendants, or established without dispute, and on motion the court instructed a verdict in its favor which was duly returned.

Appellants answered plaintiff's petition, among other things, alleging that they were still the true and lawful owners of the stock in question, and cross-acted in conversion against appellee Wharton Bank & Trust Company. In their cross action, appellants alleged, among other things, that on May 8, 1936, appellee, Wharton Bank & Trust Company, made a loan of $10,000 to Sterling & Baker evidenced by a demand note of that date and accepted from Sterling & Baker as collateral securing the payment of said note 274 shares of Humble Oil & Refining Company stock; that on October 6, 1936, appellee made Sterling & Baker a second loan in the sum of $10,000 evidenced by a demand note of that date, and as collateral securing the payment thereof accepted from Sterling & Baker 257 shares of Humble Oil & Refining Company stock; that on January 28, 1937, appellee consolidated these two loans, released 134 shares of said collateral stock, and accepted a demand note of that date executed by Sterling & Baker, in the sum of $20,000 secured by the remaining 397 shares of said collateral stock; that on August 1, 1937, Sterling & Baker executed and delivered to appellee Wharton Bank & Trust Company, a renewal note in the sum of $20,000, the payment of which was likewise secured by the 397 shares of stock, which said note is the note involved in this suit; that the 397 shares of stock described in the cross-action were delivered by Sterling & Baker to South Texas Commercial National Bank of Houston for appellee Wharton Bank & Trust Company at its direction; that thereafter on October 19, 1937, the said 397 shares of stock then held by appellee to secure the payment of said $20,000 note, dated August 1, 1937, having depreciated in value, on demand of appellee for additional security for the payment of said note, Sterling & Baker delivered to South Texas Commercial National Bank 70 additional shares of Humble Oil & Refining Company stock for appellee as collateral to secure said note. The 70 shares, and the 397 shares of stock above mentioned, except the three shares standing in the name of

634

Sterling & Baker, constitute the 464 shares of stock involved in this suit.

Appellants further alleged that on May 6, 1936, before any of the loans mentioned were consummated, Sterling & Baker wrote appellee the following letter:

"May 6, 1936.
"Wharton Bank & Trust Company,
"Wharton, Texas.
"Gentlemen:

"Referring to collateral loans, made or to be made to us as brokers, we wish to confirm—

"(1)   We are subject to the provisions of Regulation T of the Federal Reserve Board.

"(2)   Securities pledged are carried for the account of our customers, and are not the property of the firm or any of its partners.

"Yours truly,
"Sterling & Baker,
"BFS                    By

Appellants, in their cross action, further alleged that Sterling & Baker wrongfully and unlawfully rehypothecated to appellee, Wharton Bank & Trust Company, the 464 shares of their stock without their knowledge or consent; that each appellant's stock thereby became subject to a lien to secure an indebtedness of $20,000, greatly exceeding the amount of indebtedness, if any, owing at that time by any one of the appellants to Sterling & Baker, and in fact, greatly exceeding the aggregate amount of the indebtedness owing at the time by all the appellants to Sterling & Baker; that appellee, Wharton Bank & Trust Company knew at the time it accepted the stock that Sterling & Baker did not own said stock, and either knew or should have known that the rehypothecation of said stock by Sterling & Baker was unauthorized, and that appellee therefore was guilty of converting the said stock. Appellants prayed for the recovery of their stock from appellee, Wharton Bank & Trust Company, on payment to it of the amount of their indebtedness owing to Sterling & Baker at the time said stock was hypothecated by Sterling & Baker to appellee, or, in the alternative, for the value of their stock alleged to have been converted by appellee, less the amount of such indebtedness.

In answer to said cross action, appellee Wharton Bank & Trust Company plead the two year statute of limitation, and further that appellants had not tendered to appellee the full amount of their indebtedness to Sterling & Baker as a condition to a recovery of their stock; that appellants either expressly or impliedly authorized Sterling & Baker to repledge the stock as they did; that if Sterling & Baker did not have authority to repledge the stock appellants had nevertheless misled and deceived appellee by clothing Sterling & Baker with "full indicia of ownership" of the stock by delivering the stock certificates and stock powers to said Sterling & Baker, and thereby estopped themselves to assert their title to such stock.

H. A. Phillips, trustee of the estate of Sterling & Baker, answered appellee's petition in interpleader and appellants' petition in cross action that appellants, or some of them, were indebted to Sterling & Baker, and that he, as their trustee, was entitled to the possession of said certificates of stock until the indebtedness against same was discharged; that appellee bank obtained possession of the 70 shares last delivered in response to a margin call without the payment of any consideration, and so he was entitled to the possession of same free of the alleged claim of appellee; and that in all events he was entitled to the balance remaining after the satisfaction of any lien that might be adjudged against the stock delivered to him as trustee in bankruptcy of the estate of Sterling & Baker, bankrupts, to be administered in due course.

The case was tried to a jury on special issues upon their answers to which judgment was rendered in favor of appellee, Wharton Bank & Trust Company, decreeing that it had a valid subsisting first lien on the stock in question to secure the payment of the $20,000 note owing by said Sterling & Baker to said bank, and to secure the payment of which said stock was pledged to said bank by Sterling & Baker, and further decreeing that the lien on said stock be foreclosed and that any surplus of said security remaining after satisfaction of such indebtedness be delivered to H. A. Phillips, in his capacity as trustee, of the estate of Sterling & Baker, bankrupts, to be held by him subject to the orders of the bankruptcy court. Motion for a new trial was denied and we have the case for review.

It is conceded by both appellants and appellee that the primary question to be determined on this appeal, is that of estoppel, that is did the evidence raise the issue of estoppel against appellants, and did the evidence support the finding of the jury in answer to said issues. (Appellants' brief,

page 11. Appellee's brief, page 1). The pleadings and the evidence raised the question of estoppel. The record reflects that the firm of Sterling & Baker was that of margin broker, that is, it purchased stock on margin for customers. This was done by the customer leaving certain collateral with the firm (usually certificates of stock, and the broker would purchase the stock ordered by the customer, the customer not paying anything in cash.) Most of the appellants dealt with Sterling & Baker on this basis, in nearly every instance the customer not intending to pay out the stock and take possession of same, but hoped for a rise in the stock market, in which event he would order the stock, which he had not paid for, or even seen, sold and collect the difference from the broker as a profit.

The evidence shows without dispute, that neither Sterling nor Baker were wealthy men. For a time they were both employees of the Humble Company. Unless a margin broker has unlimited means, he must obtain his working capital by pledging as collateral for his own loans stock placed with him as collateral by his customers to secure their margin accounts. This because the normal margin customer does not pay cash to the broker when ·he orders stock purchased. In order to execute such orders the broker must either put up cash or collateral. The stock left with the broker to secure the customer's margin account is used by the broker as collateral for loans to the broker which enable him to execute the customer's order. The broker's commission on each order is relatively small, and so he must handle a large volume of orders to make any money, and this means obligating himself for large sums of money and requiring a vast amount of collateral. This is all shown abundantly by the record. Nearly all of the appellants had done a margin stock business with Sterling & Baker for years. Each time a stock was bought or sold Sterling & Baker sent the customer for whose account the transaction was handled a "bought" or "sold" notice, each of which contained the following printed on the face thereof:

"It is agreed between broker and customer,

"1. That all transactions are subject to the rules and customs of the New York Exchange and its clearing house.

"2. That all securities from time to time carried in the customer's marginal account, or deposited to protect same, may be loaned by the broker, or may be pledged by him either separately or together with other securities, either for the sum due thereon or for a greater sum, all without further notice to the customer.

"Sterling & Baker."

It is thus seen that appellants had full notice that Sterling & Baker was transacting their broker's business in accordance with the rules and customs of the New York Exchange, and that all securities carried to protect customers' marginal account might be loaned or pledged by the broker either separately or together with other securities either for the sum due thereon or for a greater sum without further notice to the customer.

But appellants insist that Sterling & Baker could not repledge as security for their own debts stock left with them as collateral by their customers, and so appellee, Wharton Bank & Trust Company, having knowledge that the stock pledged to it by Sterling & Baker was not the property of Sterling & Baker, the pledging of the stock by Sterling & Baker as security for their own debt was unlawful, did not create a lien on said stock, and appellants were not estopped to assert their ownership to same free from any lien in appellee for the payment of the debt of Sterling & Baker.

This contention is denied. When each of the appellants pledge their stock to Sterling & Baker as security for the payment of the amount of the bought stock, he executed the usual form of stock power, and same was attached to the stock, to wit:

"For value received, ——— hereby sell, assign and transfer unto ———

"Please print or typewrite name and address of assignee ——— shares of the Capital Stock represented by the within Certificate and do hereby irrevocably constitute and appoint ——— Attorney to transfer the said stock on the books of the within named Company with full power of substitution in the premises.

"Dated ———.

"In presence of ———

———."

It is thus seen that there was no limitation or restriction of the power by the person in whose name the certificate was issued. It was necessary, if the customer of a margin broker did not want a bank to believe that the broker had the right to repledge the stock for his own loans, the customer should have placed a limited or restricted endorsement on the stock power.

That this was in accordance with the well established and understood custom of margin stock transactions was shown by the testimony of numerous witnesses, among them being Mr. Betts, a banker and former Federal Reserve Bank Examiner, Mr. Gentry, manager of the Houston Branch of the Federal Bank, Mr. Hanna, vice president of South Texas Commercial National Bank of Houston, and Mr. Sandlin, National Bank Examiner.

The parties stipulated:

Wharton Bank & Trust Company would not have made either of the loans of $10,-000.00 each to Sterling & Baker which it did make on an unsecured basis. If Wharton Bank & Trust Company is not allowed to resort to the stock which it took to secure them in the Loans made by it to Sterling & Baker it would suffer a loss in the amount of those loans plus interest, expenses and attorneys' fees, less such amounts as Wharton Bank & Trust Company may obtain through subrogation of Sterling & Baker's rights against the cross-plaintiffs herein.

"It is agreed that Wharton Bank & Trust Company gave value to Sterling & Baker for the certificates of stock taken by it from Sterling & Baker as collateral to secure the two loans of $10,000.00 each, made, respectively on May 8, 1936, and October 6, 1936, at the time said loans were made. It is further agreed that Wharton Bank & Trust Company gave value to Sterling & Baker for the certificates of stock which were taken on and prior to August 10, 1937, in substitution for stocks previously pledged to said bank by Sterling & Baker to secure the aforesaid indebtedness or any part thereof, as evidenced by the notes dated May 8, 1936, October 6, 1936, January 28, 1937, and August 1, 1937. No agreement is made with respect to whether or not any value was given by the bank at the time the 70 shares were taken on or about October 19, 1937."

So, it is conceded that Wharton Bank & Trust Company loaned Sterling & Baker $20,000 and accepted the stock of the Humble Oil & Refining Company from Sterling & Baker with properly executed unrestricted stock powers attached as security for the payment of the loan. The above stipulation shows that appellee would not have made the loan to Sterling & Baker but for the pledged stock and the attached stock powers securing payment, and that appellee paid value for the certificates of stock, and that if appellee is not allowed to resort to the stock to secure the payment of said loan it will suffer a large loss. Under the evidence, Wharton Bank & Trust Company was an innocent holder of the stock for value, the jury so found.

Appellants had the means at hand and could have prevented the rehypothecation of their stock by Sterling & Baker. They could have limited the right of repledging to the amount of their indebtedness, each for himself, by so stating in the stock power, and thus have preserved the full right of redeeming his stock to the amount over his indebtedness. By their negligence in giving an unlimited stock power under the well known custom of margin stock dealings, transferring the stock by an unlimited stock power, the pledgee could repledge the stock even for his own indebtedness, and here this was done by Sterling & Baker in pledging to appellee the stock to secure their $20,000 note.

Testifying as to the custom of banks in making loans to brokers, such as Sterling & Baker, R. H. Hanna, vice president of the South Texas Commercial National Bank of Houston, Texas, and who had been connected with that bank for forty years, after testifying that his bank had previously made loans to Sterling & Baker on its own account, testified:

"Q. State whether or not you knew as a reasonably prudent banker that when a broker, such as Sterling & Baker, tenders stock, that stock is carried for the account of customers and does not belong to the broker. A. Yes.

"Q. When your bank made these prior loans to Sterling & Baker state what your bank relied on when it took the security as indicating that Sterling & Baker had the authority to pledge that stock. A. We relied on the stock powers attached to the stock certificates.

"Q. Did you rely on that even though you knew that the stock was carried for the account of customers? A. Yes.

"Q. Had that been customary in banking circles to so rely when making loans to brokers such as Sterling & Baker? A. Yes."

As to this custom, Mr. I. F. Betts, banker and former Federal Reserve Bank Examiner, testified:

"Q. According to the custom and practice as you have known it, Mr. Betts, and bearing in mind the practice of brokers to pledge stock of a customer for the broker's own loans, if a certificate of stock is delivered to a broker and the person in whose name that certificate likewise delivers to the broker a signed stock power, what, if anything does that indicate to anyone dealing with the broker as to the broker's right to make use of that certificate of stock? A. I would say that it indicates that the broker can use it in any way he wants to.

"Q. Are those customs that you speak of, customs that you have found to have general application in 1936 and the present time and prior to 1936? A. Yes, sir."

W. D. Gentry, manager of the Houston Branch of the Federal Reserve Bank, W. A. Sandlin, National Bank Examiner, Martin McCain, State Bank Examiner, George Hallman (banker 15 years, Federal Reserve Bank Examiner 19 years), and others, bankers and associated with banks, testified to like effect. Appellee's pleading covered the foregoing facts, including the customs and practices proven, and asserted the plea of estoppel against appellants. The jury found that there existed in that territory a general custom whereby brokers, who sold stock on margin to customers, repledged collectively to banks to secure their own loans, the various stocks which customers had left with the brokers to secure such customer's account; that a general custom existed among bankers whereby the acts of a customer of a broker who sold stocks on margin, in placing in the possession of the broker a stock certificate together with a stock power executed without limitation, were regarded as thereby authorizing the broker to repledge the stock, together with other stock carried for the account of customers, to secure the broker's own loan; that in accepting the collateral appellee knew of and relied on said custom; that there existed a general custom whereby a banker, if tendered as collateral for a loan made to a broker of good reputation who sold stocks on margin, certificates of stock, with attached stock powers executed without limitation by the person in whose name the certificates were registered, would accept said certificates as collateral, believing that the executed stock powers conferred on the broker authority to so pledge the stock, even though the banker knew that the stock did not belong to the broker, but was carried by him for the account of customers; that in accepting the collateral appellee knew of and relied on said custom; that there existed a general custom whereby a bank to which stock certificates were pledged was authorized to fill in any space left blank in a stock power attached to said certificate, provided the stock certificate was executed without limitation by the person in whose name the certificate was registered; that in accepting the collateral in question appellee knew of and relied on such custom; that appellee was a bona fide pledgee of the 397 shares of Humble stock pledged to it by Sterling & Baker on and prior to August 30, 1937; that in accepting said collateral appellee was induced to believe that Sterling & Baker had the right to pledge said stock by virtue of the fact that each certificate of stock had attached to it a stock power executed without limitation by the person in whose name said certificate was registered; that appellee would not have accepted said stock as collateral if each certificate had not been accompanied by a stock power executed without limitation by the person in whose name the certificate was registered; that appellee was a bona fide pledgee of the 70 shares of stock placed with it as additional collateral in October, 1937; that in accepting said stock appellee believed that Sterling & Baker had the right to pledge the stock by virtue of the fact that each certificate of stock had attached to it a stock power executed without limitation; that appellee would have demanded immediate payment of the note if Sterling & Baker had not put up the additional collateral; that in consideration of Sterling & Baker putting up the additional collateral, appellee impliedly agreed to extend the payment of the note evidencing the debt; and that appellee did extend the payment of said note for a reasonable time after the additional collateral was put up by Sterling & Baker. All of the findings by the jury above noted were abundantly supported by the evidence.

By reason of the undisputed facts disclosed by the record appellants are estopped to deny appellee's lien on the stock held by it to secure the payment of the $20,000 note owed by Sterling & Baker, and for foreclosure of said lien on said stock.

A number of other assignments are presented, but as we view the record and admissions of the parties, they would become material only in the event the lien on the stock asserted by appellee was held to be invalid, and since we hold the lien to be

valid and the debt it secures showing to be entirely unsatisfied, the assignments are immaterial and need not be discussed.

The parties have cited many authorities, but as it would be impossible to cite, quote from or discuss these authorities, without rendering this opinion unreasonably long, we content ourselves with stating the undisputed facts shown by the record together with some matters agreed to, and state the well settled law, as we understand it, applicable to the facts.

The judgment is affirmed.