## In re RAINEY et al.
### Nos. 2249, 2252.

United States District Court
S. D. Texas, Houston Division.

Oct. 4, 1951.

Vinson, Elkins, & Weems, Earl A. Brown, Jr., and H. C. Huston, Houston, Tex., for Heights State Bank of Houston.

Baker, Botts, Andrews & Parish, J. Curtiss Brown, Houston, Tex., for Trustee in Bankruptcy.

Walker F. Johnston and A. Milton Vance, Houston, Tex., for Bankrupt.

Elbert Roberts, Houston, Tex., Referee in Bankruptcy.

KENNERLY, Chief Judge.

This is a hearing on the Petition of the Heights State Bank of Houston to Review an Order made in this case by the Referee in Bankruptcy.

During 1949 and 1950, the Bank made three loans to the Bankrupt (Walter M.

Rainey, doing business as Walter M. Rainey Construction Company) which were unpaid, wholly or in part, at the date of the filing of the Petitions in Bankruptcy and the Adjudications herein. These were the Loan of January 29, 1949 (referred to by the Referee as Claim A), of February 19, 1949 (referred to by the Referee as Claim B), and of March 13, 1950 (referred to by the Referee as Claim C). The first two loans (Claims A and B) were secured by Chattel Mortgage on certain personal property. The third loan of March 13, 1950, for $10,000 (Claim C), was secured by a Deed of Trust or Mortgage on certain Houston real estate.

The Bank claimed and claims that such Deed of Trust (dated March 13, 1950, and in the Record) was *also* intended to secure and does secure the then unpaid indebtedness of the first two loans (Claims A and B). This, the Trustee, in appropriate proceedings, disputed. The Referee, by his Order of August 7, 1951, decided for the Trustee and against the Bank. The Bank filed its Petition to Review his action, and the question is here for decision.

Further, the Referee refused to allow the attorneys' fees stipulated in the Notes, constituting Claims A, B and C, allowing only what he finds to be a reasonable attorneys' fee. Of this, the Bank complains in its Petition for Review, and that question is also here for decision.

(a) The Order of the Referee (August 7, 1951) on the first point sought to be reviewed is as follows (italics mine): "The Referee is of the opinion *by reason of the findings herein above made that the* contest of the Trustee to the allowance of the bank's claim as a secured claim for the balance due on the two notes secured by chattel mortgage should be sustained and that the secured claim should be limited to the amount due on the note set out in sub-paragraph C of the claim and being the balance due on the note secured by the deed of trust, with the exception that the attorneys' fees should be reduced." etc.

(b) The findings referred to in such Order are apparently as follows (italics mine):—

"The bank is claiming that its total indebtedness is secured by the motor vehicles, the tractor, the Gunite machine, and the *real estate,* basing this claim upon a paragraph in the deed of trust, being subdivision 2 of paragraph 2 of the deed of trust, to which paragraph reference is made. The portion of said paragraph claimed to be applicable seems to be the following words included in said paragraph, '*Any and all other direct and indirect obligations and indebtedness now or at any time in the future owing and to be owing by grantor (any or all of them) to bank, its successors, and assigns, regardless of how evidenced or how incurred;*' I find that the indebtedness claimed under subparagraphs A and B of the claim occurred prior to the indebtedness under the deed of trust as set out in subparagraph C of said claim, and that said indebtedness under A and B were renewed and extended subsequent to the date of the note and deed of trust on the real estate as set out in subsection C of the claim. No mention was made in the renewals of these two indebtednesses that they were in any way secured except by the chattel mortgages, and no reference was made therein that they were additionally secured under the deed of trust.

"The deed of trust loan was made on March 13, 1950, and the deed of trust was of even date therewith, and the two indebtednesses under A and B were not specifically mentioned in the deed of Trust as indebtedness being secured thereby, but is claimed to be secured by reason of the printed provision in the deed of trust above-quoted."

1:—These do not appear to be fact-findings of the Referee which may not be disturbed, Phillips v. Baker, 5 Cir., 165 F.2d 578, but they are conclusions of law reached by the Referee upon proven or undisputed facts.

2:—This brings us at once to a discussion of the first question of whether such Deed of Trust of March 13 1950, secures the first two loans (Claims A and B). I think the question may be and must be decided by determining the legal effect of the Deed of Trust itself.

Such Deed of Trust is partly printed and partly typewritten. It contains five Sections which are lettered I, II, III, IV, and V. Each of the lettered Sections contains Paragraphs which are numbered and designated by figures.

Section I contains two numbered Paragraphs. The first paragraph is a clause conveying the Houston real estate (which is described) to a Trustee in Trust, and the second paragraph is the habendum clause.

Passing now to Section II. The first line of Section II reads: "This conveyance is made in trust, however, to secure and enforce the full and prompt payment when due of:"

Then follow two paragraphs numbered (1) and (2). Paragraph (1), shown in the margin, is a typewritten description of the $10,000 note of March 13, 1950.[1] Paragraph (2), shown in the margin,[2] contains the language substantially as stated by the Referee and other pertinent language.

■ I find myself unable to agree with the Referee. If we stop here, I think there is no escape that under the quoted provisions of the Deed of Trust, all indebtedness of Bankrupt to the Bank, including the first two loans (Claims A and B), as well as the third loan (Claim C), are secured thereby.

But the provisions discussed are not all. Other provisions of the Deed of Trust, when looked to, support the Bank's contention, particularly the provisions of Paragraph (1) of Section III, quoted in

1. Paragraph (1) of Section II is as follows: "(1) All sums called for, owing and to be owing upon That certain note dated March ——, 1950, executed by Grantor, payable to order of Heights State Bank, Houston, Texas, at its banking quarters in Houston, Texas, providing for 6% interest from date until maturity, and 8% interest on all past due principal and interest from maturity until paid, in the principal sum of $10,000.00, payable in 60 monthly installments, the first 59 of which are in the amount of $167.00 plus accrued interest each, and the last and 60th of which is in the amount of $147.00 plus accrued interest, with the first of said installment being payable on the 1st day of April, 1950, and the remainder of said installments being due and payable in their numerical order on the first day of each and every succeeding calendar month thereafter until all sums owing and to be owing thereon have been paid in full; and said note providing if default is made in the payment of any installment thereof when due that the owner and holder of said note shall have the right to declare all sums owing thereon at once due and payable, and if default is made in the payment of said note at maturity and the same is placed in the hands of an attorney for collection or suit is filed thereon, or proceedings are had in bankrupt, probate, receivership, re-organization or other judicial proceedings for the collection thereof, that the maker of said note is to pay to the owner thereof 10% of the principal and interest then owing thereon as attorney's or collection fees."

2. Paragraph (2) of Section II is as follows (italics mine): "(2) *All sums owing and to be owing upon any renewals, extensions, and rearrangements of any and all notes hereinbefore described, in whole or in part; any and all other direct and indirect obligations and indebtedness now or at any time in the future owing and to be owing by Grantor (any or all of them) to Bank, its successors and assigns, regardless of how evidenced or how incurred;* the payment and reimbursement of any and all sums that might be advanced or paid by Bank or by Trustee or any substitute Trustee to satisfy taxes, insurance premiums, claims, liens, or charges against any of the property mentioned herein, together with interest thereon as herein provided; all amounts which might at any time be paid or advanced by Bank or Trustee to prevent or cure defaults hereunder; all interest, costs, charges, trustee's commissions, and attorney fees owing or to be owing on or in connection with said indebtedness and obligations *(any or all of them)*, and all those incurred and to be incurred and those owing and to be owing in connection with the administration, operation, upkeep, maintenance, repairing and/or foreclosing of the aforesaid properties, the whole and any part thereof. *All indebtedness, sums, amounts and items described or mentioned in this Section II hereof are hereinafter sometimes collectively referred to as indebtedness, which terms*

the margin.[3] This provides that the conveyance shall become null and void upon payment, not only of the $10,000 Note (Claim C), but also all other amounts and indebtedness secured and to be secured, etc. Note also those provisions in Para-

*shall include each and all of them, and all of which are and shall be secured hereby."*

3. Paragraph (1) of Section III of the Deed of Trust is as follows (italics mine): "(1) If the Grantor shall promptly and fully pay when due all sums owing and to be owing on all notes mentioned under Paragraph 1 of Section II hereof, including principal, interest, and attorney's fees, according to the reading, tenor, and effect thereof; *shall promptly pay when due all other amounts and indebtedness secured and to be secured hereby; and shall well and truly keep and perform all of the covenants and provisions hereof, then this conveyance shall become null and void,* and Bank, its successors and assigns, will, at the request and expense of Grantor, will execute and deliver a release hereof (without covenant or warranty of any kind, however, express or implied); otherwise, the same is to and shall remain and continue in full force and effect. In the event Grantor defaults or fails to fully pay when due all sums owing and to be owing on said notes, or any note hereinbefore mentioned, including principal, interest, and attorney's fees, according to the reading, tenor, and effect thereof; or fails to promptly and punctually pay any or all of the amounts and indebtedness secured and to be secured hereby, principal or interest, in whole or in part, as the same shall become due and payable or Grantor fails to observe and keep any of the covenants, conditions, agreements, or provisions hereof, it shall thereupon, or any time thereafter while the same or any part of said amounts or indebtedness remains unpaid, be the duty of Trustee, or any successor or substitute Trustee, appointed hereunder, at the request of the legal owner and holder of said indebtedness, or of the majority thereof (which request shall be presumed), to enforce this trust and to sell as an entirety or in parcels, as the Trustee acting may elect, (all rights to a marshalling of the assets of the Grantor, including the property herein conveyed, being hereby expressly waived) the hereinbefore described property, or any part thereof, in whole or in part, at the courthouse door of the county in which said property is situated, on the first Tuesday of any calendar month, between the hours of ten A.M. and four P.M., to the highest bidder for cash at public auction, after first giving at least twenty-one (21) days' notice of the time, place, and terms of sale by publicly advertising the same by posting or causing to be posted written or printed notices thereof at three (3) public places in said county in which the property is situated, selected by the Trustee acting or by a person chosen by him, one of which public places should be at the courthouse door of said county, for at least twenty-one (21) days successively next before the day of sale, and to make due conveyance to the purchaser or purchasers with general warranty binding Grantor, the heirs, successors and assigns of Grantor, Trustee shall have the right to sell the properties covered hereby, in whole or in part, selling such portions as Trustee might desire or elect, and selling in such order and in such parcels as Trustee might determine or decide. The right of sale hereunder shall not be exhausted by one or more sales, but the Trustee acting may make other and successive sales until all of the property subject to this Deed of Trust has been legally sold. In the event of any foreclosure proceedings hereunder, it shall not be necessary or requisite for any Trustee or any officer under any execution to have physically present at any such sale or sales or to have constructively in his possession any or all of the personal property covered by this instrument, and Grantor hereby covenants and agrees to deliver all of such personal property offered for sale at any and all such sales to such purchaser or purchasers on the date of sale, and if it should be impossible or impractical to make actual delivery of such property, then the title and right of possession of said property shall pass to the purchaser or purchasers at said sale as fully as if same had been actually present and delivered. In the event of such sale or sales, any one or more of the holders of the indebtedness then secured hereby, or any part thereof, shall have the right to become the purchaser or purchasers at said sale or sales, being the highest bidder for the property offered at any such sale or sales, or any part thereof, and shall have the right, in lieu of cash payment, to apply the amount bid against indebtedness owing by said owner and holder of indebtedness. In the event of foreclosure of this Deed of Trust, whether under the power of sale herein contained or by suit or otherwise, no right shall ever exist upon the part

graph (2) of Section III, quoted in the margin,[4] which direct the payment of the proceeds from any Trustee's sale thereunder to be applied, after the payment of the $10,000 Note (Claim C), to any and all other indebtedness secured thereunder. Also the provisions quoted in the margin [5] that all rights, titles, liens, or equities held under the Deed of Trust, or by any other instruments, shall be considered cumulative, one of the other and not exclusive. Also the provision quoted in the margin [6] that

of Grantor, the heirs, successors or assigns of Grantor, or any purchaser or lienholder, or other person or concern whatever, claiming under any or all of them, by virtue of any right, title, interest, lien, encumbrance, or claim whatsoever arising or acquired subsequent to the date of this instrument, or to a sale of said property in parcels, or to a marshalling of said property, or a sale in inverse order of alienation."

4. Paragraph (2) of Section III is as follows (italics mine) :—

"(2) Proceeds derived and to be derived from sale and sales provided for hereunder shall be applied by Trustee as follows) :—

"(a) First, to the payment of all expenses in administering said property and reasonable compensation to the agents and attorneys for Bank and Trustee; to the payment of all taxes, assessments, and the liens equal or superior to this instrument; all advances and costs incurred in connection with the property; and all costs of the holding and concluding of such sale or sales, including a commission of five per cent (5%) to the Trustee acting;

"(b) Next, to the payment in full of all sums owing upon the aforesaid note or notes hereinbefore described in paragraph (1) of Section II hereof and owing upon any and all renewals, extensions, and rearrangements thereof, or any part thereof, according to the reading, tenor and effect of said notes and evidence of indebtedness, including principal, interest and attorney's fees;

"(c) *Next, to the satisfaction of any and all other indebtedness and amounts secured and to be secured hereby, in such order as Bank may elect and request; and all sums remaining and balance, if any, is and shall be paid to, deposited in Bank to the account of, or made available to Grantor, the heirs, executors, administrators, successors or assigns of Grantor; and Grantor covenants and agrees to make good any deficiency existing between the full amount realized from such sale or sales and the amount necessary to fully satisfy the indebtedness, sums, and items upon which application is to be made under this and*

*the two immediately preceding subparagraphs lettered (a) and (b) respectively."*

5. Paragraph (5) of Section IV is as follows: "(5) All rights, titles, liens or equities held under and by virtue of this instrument, or by any other instruments, in law or in equity, shall be considered as cumulative one of the other, and not exclusive, and Trustee and any holder and owner of said indebtedness herein described, shall have the right to proceed under any of the rights owned by him or it, without affecting any other rights. Neglect to proceed on any rights or neglect to declare any default shall not waive or prejudice any lien or privilege held, and by election to proceed upon one right or remedy, the other rights and remedies shall not be affected, but Trustee and any owner and holder of said indebtedness shall have the right to exhaust all rights, remedies, jointly or separately until all indebtedness secured and to be secured hereby has been fully paid."

6. Paragraph (9) of Section IV is as follows: "(9) No other security now existing, or hereafter taken to secure the payment of said indebtedness, shall be impaired or affected in any manner by the execution of this instrument; and no security subsequently taken by any holder of said indebtedness, shall impair or affect in any manner the security given by this instrument, and all additional security which has been given and may be given for the payment of indebtedness shall be taken, considered and held as cumulative. The taking of additional security, execution of partial releases of the security, or any extension of the time of payment of indebtedness, or any part thereof, shall not diminish the force, effect or lien of this instrument as to any property not specifically released in writing by the owners of said indebtedness, and shall not affect or impair the liability of any maker, surety or endorser for the payment of said indebtedness; and this instrument shall continue as a first lien (unless otherwise provided here) on all of said property herein described not expressly released in writing by the owner or owners of said indebtedness until all indebtedness secured and to be secured hereby is fully paid."

the security which has been given for the payment of indebtedness shall be taken, considered, and held as cumulative, etc.

The Deed of Trust, when read from its four corners, is perfectly plain and unambiguous, clearly shows the intention of the parties, and may not be varied by extraneous evidence. It secures not only the third loan $10,000 Note (Claim C), but all other indebtedness of the Bankrupt to the Bank, including the notes executed for the first and second loans (Claims A and B).

This being true, if it was error for the Referree to consider the circumstances that when Claims A and B were renewed, the Deed of Trust was not mentioned, such error is immaterial. It was not error for him to refuse to hear the witness J. D. Larrabee as to the intention of the parties in executing the Deed of Trust. As stated, their intention clearly appears from the Deed of Trust itself.

3:—The Bank also complains of the refusal of the Referee to allow the full amount of attorneys' fees stipulated in all the notes. On this point, the Referee in his Order of August 16, 1951, says: "At the beginning of hearing on protest of the Trustee in Bankruptcy to allowance of Claim No. 4 of Bank, said hearing being held on May 11, 1951 in the Scanlon Building, Houston, Texas, Bank and the Trustee in this bankruptcy matter stipulated in open court that the total aggregate indebtedness of $26,429.57, as shown by Proof of Claim No. 4 filed herein by Bank, was correct and undisputed, and that the only issue to be determined on the protest of Trustee was whether loans (a) and (b) in said claim were secured by the deed of trust dated March 13, 1950."

The Referee says in his Order of August 7, 1951:

"The contest of the Trustee does not specifically raise a contest as to the attorneys' fees charged and included in the claim. It is the Referee's understanding of the Bankruptcy Act that even though the instrument upon which the claim is based provides for ten per cent attorneys' fees, that unless the note or instrument is placed in the hands of an attorney prior to bank-

ruptcy the fees cannot be allowed unless the instrument provides that if collection is made through the Bankruptcy Court and that when it so provides, the Referee, if the amount claimed is excessive, can reduce the attorneys' fees to what is established as a reasonable fee for the services rendered. In this instance the attorneys for the bank filed a claim and in their calculations on the indebtedness under subparagraph A claim attorneys' fees of $999.77, on the indebtedness under subparagraph B attorneys' fees of $505.97, and on the indebtedness under subparagraph C attorneys' fees of $887.51, or a total of $2,393.25 for services in connection with the filing of the claim, which in the opinion of the Referee is excessive, but there is no contest of the same, no allegation in the claim that the amount claimed is a reasonable fee, or that the claimant had contracted with the attorneys to pay the same, and the Referee is constrained to disallow the attorneys' fees in the amount claimed, and feels that $750.00 would be a reasonable fee for the services rendered, chargeable pro rata to each of the items constituting the total claim and to be dealt with under the provisions of this order with reference to the disposition made of each of the separate items of the claim. * * *

"The Referee is of the opinion * * * that the attorneys' fees should be reduced to what in the opinion of the Referee is a reasonable attorneys' fees, there being no allegations or proof in the record of any services justifying this charge, and viewing the attorneys' fees as an unliquidated claim and not having been established by proper pleadings and proof, the feeling that the claimant is entitled to recover a reasonable attorneys' fee and in view of the fact that such fee as allowed under subparagraph C will be secured by the deed of trust, the Referee is of the opinion that the $750.00 fee allowed should be applied as follows: $375.00 to the secured claim under the subparagraph C of the proof and the other $375.00 should be allowed in connection with the two notes secured by chattel mortgage."

According to the statement of the Referee, the parties stipulated that the aggregate amount owing on all loans (Claims

A, B and C) was $26,429.57. Of this amount, $2,393.25 was attorneys' fees as called for in the Notes, which the Referee has reduced to $750. The Bank's complaint may best be stated by quoting from its Petition to Review:

"At the commencement of hearing on this protested claim, counsel for Bank asked in open court whether there was any contest with respect to the amount of the principal indebtedness, interest and attorneys' fees as reflected by said Claim No. 4, and the Trustee in open court advised the Referee that the total aggregate indebtedness of $26,429.57 reflected by said Proof of Claim No. 4 was correct and undisputed. (See Order of Referee in Completion of Record, paragraph 1). Nevertheless, the Referee in his Order has reduced the aggregate amount of such fees to the sum of $750.00.

"On such hearing, Bank was prepared to make proof of services rendered in support of its claim for said attorneys' fees, the attorney who had performed such services for Bank to the date of said hearing being present in the court for such purpose. However, in view of the stipulation and the absence of any proof or claim that such attorneys' fees were unreasonable, this proof was not offered. Thus, there being no proof in the record of this case that said amount of attorneys' fees is excessive, there exists no basis for the determination by the Referee that said amount of attorneys' fees is unreasonable."

 The reasons of the Referee in not following such Stipulation of counsel for the Trustee and the Bank made at the hearing are not shown by the Record; hence I do not pass on the question. Apparently the Bank was not heard on the question, nor was evidence heard as to the right of the Bank to recover attorneys' fees independently of the Stipulation. This necessitates a rehearing before the Referee in the matter of attorneys' fees.

From what has been said, it follows:

(a) That the Order or Orders of the Referee refusing to recognize the Deed of Trust Lien of the Bank as securing Claims A and B, as well as Claim C, should be reversed, and Order here entered so recognizing and enforcing such Lien.

(b) That the Order or Orders of the Referee refusing to allow the full amount of the attorneys' fees provided for in Claims A, B, and C, should be reversed and the matter of the attorneys' fees sent back to the Referee so that he may consider the legal effect, if any, of the Stipulation made before him and hear and consider all proper evidence offered in such matter.

Let appropriate Order, drawn in accordance herewith, be presented.